ACCEPTED
13-14-00560-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
3/16/2015 6:41:05 PM
DORIAN RAMIREZ
CLERK

NO. 13-14-00560-CV

IN THE COURT OF APPEALS OF TEXAS
THIRTEENTH APPELLATE DISTRICT
AT CORPUS CHRISTI AND EDINBURG

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/16/2015 6:41:05 PM
DORIAN E. RAMIREZ
Clerk

\*\*\*\*\*

# COASTAL MOTORCARS LTD.
## (formerly d/b/a BMW OF CORPUS CHRISTI),
## Appellant

## v.

# MARY LOU BROWN and MARY ALICE GARCIA,
## Appellees

\*\*\*\*\*

# Brief of Appellant

\*\*\*\*\*

On appeal from the 214th District Court, Nueces County
Hon. Jose Longoria, Judge
Cause No. 2013-DCV-0520-F

\*\*\*\*\*

> Brian Miller
> State Bar No. 24002607
> ROYSTON RAYZOR
> VICKERY & WILLIAMS L.L.P.
> Frost Bank Plaza, Suite 1300
> 802 N. Carancahua St.
> Corpus Christi, TX 78401
> Tel. No. (361) 884-8808
> Fax No. (361) 884-7261
> E-mail: brian.miller@roystonlaw.com

> *Counsel for Appellant*

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule of Appellate Procedure 38.1(a), appellant Coastal Motorcars Ltd. provides this list of parties and counsel:

| | |
|---|---|
| APPELLANT: | Coastal Motorcars Ltd. (formerly d/b/a BMW of Corpus Christi) |
| COUNSEL FOR APPELLANT: | Brian Miller<br>ROYSTON RAYZOR<br>VICKERY & WILLIAMS L.L.P.<br>Frost Bank Plaza, Suite 1300<br>802 N. Carancahua St.<br>Corpus Christi, TX 78401<br>Tel. No. (361) 884-8808<br>Fax No. (361) 884-7261 |
| | Patrick L. Beam<br>(former trial court counsel)<br>LAW OFFICE OF PATRICK L. BEAM<br>924 Leopard St.<br>Corpus Christi, TX 78401<br>Tel. No. (361) 698-3637<br>Fax No. (210) 800-9957 |
| | Eric Stewart<br>(former trial court counsel)<br>HUSEMAN & STEWART<br>615 N. Upper Broadway St.<br>Suite 2000<br>Corpus Christi, TX 78478<br>Tel. No. (361) 883-3563<br>Fax No. (361) 883-0210 |
| APPELLEES: | Mary Alice Garcia<br>Mary Lou Brown |

COUNSEL FOR APPELLEES:     Denny Barre
ANDERSON LEHRMAN
BARRE & MARAIST L.L.P.
Gaslight Square, Suite 1
1001 Third St.
Corpus Christi, TX 78404
Tel. No. (361) 884-4981
Fax. No. (361) 883-4079

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..................................................... i

INDEX OF AUTHORITIES ........................................................................ vi

STATEMENT OF THE CASE ..................................................................... xii

STATEMENT REGARDING ORAL ARGUMENT ................................. xiii

ISSUES PRESENTED ................................................................................ xiv

STATEMENT OF FACTS ............................................................................ 1

    I. Despite a conclusory summary judgment motion and evidence that
Coastal Motorcars did not receive notice, Plaintiffs obtained a no-
response summary judgment. ..................................................................... 1

    II. Plaintiff Brown purchased a BMW 528i from Coastal Motorcars,
and Plaintiffs assert that problems arose after the sale. ............................. 3

    III. Plaintiffs sued Coastal Motorcars and, after Coastal Motorcars'
counsel withdrew, obtained the summary judgment ................................. 4

    IV. Coastal Motorcars unsuccessfully moved for a new trial. .................... 6

SUMMARY OF THE ARGUMENT ............................................................ 8

ARGUMENT ............................................................................................... 9

    I. The trial court erred by granting summary judgment on a motion that
did not state grounds for the judgment. ...................................................... 9

        *A. A trial court cannot grant a traditional summary judgment by
default; rather, the motion must state sufficient grounds and have
sufficient evidentiary support.* .................................................................. 9

        *B. The grounds must be in the motion itself and must show how the
evidence establishes or negates the elements of a claim or defense.* .... 10

        *C. Plaintiffs' motion for summary judgment did not state any grounds
that would establish any of their liability theories.* ............................... 14

*D. Plaintiffs' motion did not support a damages award.* ...................... *15*

1. The trial court could not award damages on a motion that neither requested damages nor stated grounds for a damages award. ........... 15

2. Because the alleged damages are unliquidated, any error as to damages requires a reversal of the entire summary judgment. ......... 17

*E. Because Plaintiffs' motion did not state any ground for attorney fees, the trial court erred by awarding attorney fees.* ................................... *21*

II. Plaintiffs' evidence did not establish a right to summary judgment. ... 21

*A. The movant's evidence – not the lack of a response – must establish the right to summary judgment.* ............................................................ *21*

*B. As to damages, Plaintiffs did not show the absence of a genuine issue of material fact and a right to judgment as a matter of law.* ................. *22*

1. Because Plaintiffs did not establish a right to summary judgment on the amount of their economic damages, the summary judgment must be reversed. .............................................................................. 23

2. Because DTPA additional damages cannot be proven as a matter of law, the summary judgment must be reversed. ............................. 28

*C. Plaintiffs did not establish a right to summary judgment on any of their 16 causes of action.* ........................................................................ *29*

1. Deceptive Trade Practices Act ....................................................... 29

2. Breach of contract .......................................................................... 35

3. Negligence and gross negligence ................................................... 36

4. Fraud, fraud by nondisclosure, and negligent misrepresentation .. 38

5. Unconscionability .......................................................................... 42

6. Conversion ..................................................................................... 42

7. Quantum meruit, quasi contract, assumpsit, detrimental reliance, promissory estoppel, unjust enrichment, and money had and received ........................................................................... 44

D. *Plaintiffs did not establish a right to summary judgment on liability for DTPA additional damages.* ............................................... 49

E. *Unless Plaintiffs established a right to summary judgment on a theory that permits recovery of attorney fees, the award of attorney fees is error.* ...................................................................... 50

III. The trial court abused its discretion by not setting the summary judgment aside. ...................................................................... 51

A. *Due process requires setting aside the summary judgment.* ............. 51

B. *The trial court also abused its discretion by not setting aside the summary judgment for excusable accident or mistake.* ......................... 59

1. The Court may have to decide whether to apply the three-part *Craddock* test or the two-part *Carpenter* test. ................................... 59

2. Coastal Motorcars' motion for new trial satisfied both tests. ....... 63

CONCLUSION AND PRAYER FOR RELIEF ........................................... 66

CERTIFICATE OF SERVICE ................................................... 68

CERTIFICATE OF WORD-COUNT COMPLIANCE .............................. 69

# INDEX OF AUTHORITIES

**Cases**

*Amedisys Inc. v. Kingwood Home Health Care L.L.C.*, 437 S.W.3d 507 (Tex. 2014) ................................................................. 10, 21-22

*Amoco Production Co. v. Smith*, 946 S.W.2d 162 (Tex. App. – El Paso 1997, no writ) ...................................................................... 46-47, 51

*Badall v. Durgapersad*, No. 9-08-188-CV, 2009 WL 857995 (Tex. App. – Beaumont 2009, no pet.) ....................................... 20, 23, 28, 33

*Bank of Am. N.A. v. Eisenhauer*, No. 13-09-4-CV, 2010 WL 2784031 (Tex. App. – Corpus Christi July 15, 2010, no pet.) ..................................... 12-15

*Barclay v. Burge*, 245 S.W.2d 1021 (Tex. Civ. App. – Beaumont 1952, no writ) ...................................................................... 23

*Bay Area Healthcare Group Ltd. v. McShane*, 239 S.W.3d 231 (Tex. 2007) ..................................................................... 55

*Becerra v. Ball*, No. 13-10-361-CV, 2011 WL 3366361 (Tex. App. – Corpus Christi Aug. 4, 2011, no pet.) ................................................ 13-14

*BMW of N. Amer. Inc. v. Gore*, 517 U.S. 559, 570 (1996) ........................... 37

*Buc-ee's Ltd. v. Hribek*, No. 3-08-120-CV, 2009 WL 5149922 (Tex. App. – Austin Dec. 31, 2009, no pet.) ........................................... 18, 20

*Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682 (Tex. 2002) ..................................................................... 60, 61-64, 66

*Chilton Ins. Co. v. Pate & Pate Enterps. Inc.*, 930 S.W.2d 877 (Tex. App. – San Antonio 1996, writ den.) ................................................ 35

*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979). 11

*Clear Lake Ctr. L.P. v. Garden Ridge L.P.*, 416 S.W.3d 527 (Tex. App. – Houston [14th Dist.] 2013, no pet.) ........................................... 19

*Colvin v. Red Steel Co.*, 682 S.W.2d 243 (Tex. 1984) ................................. 36

*Corpus Christi Day Cruise L.L.C. v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d 303 (Tex. App. – Corpus Christi 2012, pet. den.)........................ 51

*Craddock v. Sunshine Bus Lines Inc.*, 133 S.W.2d 124 (Tex. 1939) ......59-64

*Currey v. Lone Star Steel Co.*, 676 S.W.2d 205 (Tex. App. – Fort Worth 1984, no writ) ................................................................................. 42

*Doctors Hosp. 1997 L.P. v. Sambuca Houston L.P.*, 154 S.W.3d 634 (Tex. App. – Houston [14th Dist.] 2004, pet. abated) ................................. 49, 51

*Edlund v. Bounds*, 842 S.W.2d 719 (Tex. App. – Dallas 1992, writ den.) .. 43

*Equistar Chems. L.P. v. Dresser-Rand Co.*, No. 14-02-874-CV, 2008 WL 850132 (Tex. App. – Houston [1st Dist.] Apr. 1, 2008, no pet.) ............... 20

*Estrada v. Dillon*, 44 S.W.3d 558 (Tex. 2001)............................................. 19

*Fed. Land Bank Assn. v. Sloane*, 825 S.W.2d 439 (Tex. 1991) ................... 39

*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007)...................... 34, 38

*Fortune Production Co. v. Conoco Inc.*, 52 S.W.3d 671 (Tex. 2000) ....45-46

*Garcia v. Escobar*, No. 13-13-268-CV, 2014 WL 1514288 (Tex. App. – Corpus Christi Apr. 15, 2014, pet. den.) .................................................. 52

*Garcia v. Lucero*, 366 S.W.3d 275, 281 (Tex. App. – El Paso 2012, no pet.) ................................................................................................48-49

*Green Tree Fin. Corp. v. Garcia*, 988 S.W.2d 776 (Tex. App. – San Antonio 1999, no pet.)................................................................................... 20

*Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) ...................................................................................................... 45, 47

*Henry S. Miller Co. v. Hamilton*, 813 S.W.2d 631 (Tex. App. – Houston [1st Dist.] 1991, no writ) ........................................................................ 19, 28

*Henry Schein Inc. v. Stromboe*, 102 S.W.3d 675 (Tex. 2003) .................... 34

*Horizon Shipbldg. Inc. v. BLyn II Holding L.L.C.*, 324 S.W.3d 840 (Tex. App. – Houston [14th Dist.] 2010, no pet.)................................................. 39

*In re Dillard Dept. Stores Inc.*, 198 S.W.3d 778 (Tex. 2006)...................... 59

*In re FirstMerit Bank N.A.*, 52 S.W.3d 749 (Tex. 2001).............................. 38

*In re Whataburger Restaurants L.P.*, 429 S.W.3d 597 (Tex. 2014) .......30-31

*Jim Walter Homes Inc. v. Valencia*, 690 S.W.2d 239 (Tex. 1985) .............. 28

*Jones v. Zearfoss*, _ S.W.3d _, No. 4-14-83-CV, 2015 WL 101592 (Tex. App. – San Antonio 2015, no pet. hist.)................................................... 40

*Kerlin v. Arias*, 274 S.W.3d 666 (Tex. 2008)............................................ 26

*L.M. Healthcare Inc. v. Childs*, 929 S.W.2d 442 (Tex. 1996) ...................... 6

*Leyendecker & Assocs. Inc. v. Wechter*, 683 S.W.2d 369 (Tex. 1984).. 17, 26

*Maan v. First ATM Inc.*, No. 3-06-698-CV, 2008 WL 5210923 (Tex. App. – Austin Dec. 12, 2008, no pet.)............................................................ 12, 14

*Madisonville State Bank v. Canterbury Stuber Elder Gooch & Surratt P.C.*, 209 S.W.3d 254 (Tex. App. – Dallas 2006, no pet.)............................11-15

*Mathis v. Lockwood*, 166 S.W.3d 743 (Tex. 2005).................... 53, 58, 61, 64

*McConnell v. Southside I.S.D.*, 858 S.W.2d 337 (Tex. 1993)......10-11, 15-16

*Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex. 1987) ...........32-33

*MMP Ltd. v. Jones*, 710 S.W.2d 59 (Tex. 1986) ........................................ 11

*Muston v. Nueces County Sheriff's Dept.*, 122 S.W.3d 469 (Tex. App. – Corpus Christi 2003, no pet.) .................................................................. 17

*Nabors Drilling U.S.A. Inc. v. Escoto*, 288 S.W.3d 401 (Tex. 2009) .......... 36

*Newsom v. State*, 922 S.W.2d 274 (Tex. App. – Austin 1996, writ den.).... 18

*Okorafor v. Lewis*, No. 14-08-130-CV, 2010 WL 1343125 (Tex. App. – Houston [14th Dist.] Apr. 6, 2010, no pet.) ........................................ 20, 23

*Peralta v. Heights Med. Ctr. Inc.*, 485 U.S. 80 (1988)..................... 52, 58, 61

*Preston Reserve L.L.C. v. Compass Bank*, 373 S.W.3d 652 (Tex. App. – Houston [14th Dist.] 2012, no pet.)........................................................ 25

*Profitlive Partnership v. Surber*, 248 S.W.3d 259 (Tex. App. – Fort Worth 2007, no pet.)..................................................................... 22, 27

*Rente Co. v. Truckers Express Inc.*, 116 S.W.3d 326 (Tex. App. – Houston [14th Dist.] 2003, no pet.) ....................................................... 43

*Rhone-Poulenc Inc. v. Steel*, 997 S.W.2d 217 (Tex. 1999)..................... 10, 22

*Rizkallah v. Conner*, 952 S.W.2d 580 (Tex. App. – Houston [1st Dist.] 1997, no writ) ..................................................................... 41, 50

*Scholtz v. Sigel*, 601 S.W.2d 516 (Tex. Civ. App. – Dallas 1980, no writ) ........................................................................................ 18

*Science Spectrum Inc. v. Martinez*, 941 S.W.2d 910 (Tex. 1997).............9-10

*Shell Oil Co. v. Humphrey*, 880 S.W.2d 170 (Tex. App. – Houston [14th Dist.] 1994, writ den.) ............................................................. 38

*Smith v. Holmes*, 53 S.W.3d 815 (Tex. App. – Austin 2001, no pet.).... 52, 59

*Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572 (Tex. 1991)..... 35

*SPT Fed. Credit Union v. Big H Auto Auction Inc.*, 761 S.W.2d 800 (Tex. App. – Houston [1st Dist.] 1988, no writ)............................................... 24

*Tactical Air Defense Servs. Inc. v. Searock*, 398 S.W.3d 341 (Tex. App. – Dallas 2013, no pet.)................................................................. 56, 59

*Taylor v. Bewley*, 56 S.W. 746 (Tex. 1900) ............................................. 18

*Tex. Dept. of Transp. v. Crockett*, 257 S.W.3d 412 (Tex. App. – Corpus Christi 2008, pet. den.) ................................................................. 36, 43

*Torres v. Garcia*, No. 4-11-822-CV, 2012 WL 3808593 (Tex. App. – San Antonio Aug. 31, 2012, no pet.)........................................................ 16, 21

*TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991) ....... 54

*Trebesch v. Morris*, 118 S.W.3d 822 (Tex. App. – Fort Worth 2003, pet. den.) ............................................................................................ 16, 21

*Warren v. U.S. Bank N.A.*, No. 2-08-256-CV, 2009 WL 485677 (Tex. App. – Fort Worth Feb. 26, 2009, no pet.)..................................................... 12, 14

*Wheeler v. Green*, 157 S.W.3d 439 (Tex. 2005) ..................................... 53, 60

*Willis v. Donnelly*, 118 S.W.3d 10 (Tex. App. – Houston [14th Dist.] 2003),
 *aff'd in part and rev'd in part*, 199 S.W.3d 262 (Tex. 2006) ................... 18

**Statutes**

TEX. ACTS (75th Leg.), Ch. 887 (1997) ....................................................... 54

TEX. BUS. & COM. CODE §17.45 ........................................................... 31, 49

TEX. BUS. & COM. CODE §17.46 .......................................................29-30, 65

TEX. BUS. & COM. CODE §17.50 ........................................... 28, 30, 34, 49, 51

TEX. BUS. & COM. CODE §2.313 ................................................................ 33

TEX. BUS. & COM. CODE §2.314 ................................................................ 32

TEX. BUS. & COM. CODE §2.714 ................................................................ 18

TEX. BUS. ORG. CODE §5.201 ................................................................... 57

TEX. BUS. ORG. CODE §5.202 ................................................................... 55

TEX. CIV. PRAC. & REM. CODE §30.015 ...........................................53-54, 58

TEX. CIV. PRAC. & REM. CODE §38.001 ................................................... 51

**Rules**

TEX. DISC. R. PROF. CONDUCT 1.15 ........................................................... 56

TEX. R. APP. P. 44.1 ........................................17, 19-20, 27, 63, 66

TEX. R. CIV. P. 10.............................................................................. 56

TEX. R. CIV. P. 166a.............................................9, 11-12, 14, 22, 27, 29, 31

TEX. R. CIV. P. 21a.............................................................................. 57

TEX. R. CIV. P. 329b.............................................................. 6, 63

**Other Authorities**

BLACK'S LAW DICTIONARY (10th ed.) ............................................................ 48

## STATEMENT OF THE CASE

Mary Alice Garcia and Mary Lou Brown ("Plaintiffs") sued Coastal Motorcars on various causes of action arising from the purchase of a used car. *C.R. 6* (pet.). The trial court (Hon. Jose Longoria, 214th District Court, Nueces County) granted Plaintiffs' motion for summary judgment and awarded damages, attorney fees, and interest. *C.R. 415-416* (order). Because Coastal Motorcars did not receive Plaintiffs' motion and accompanying notice of hearing, Coastal Motorcars made a motion for new trial and asked that the trial court vacate the summary judgment. *C.R. 421*. The trial court initially granted the motion, *C.R. 450*, before withdrawing the order that granted the motion. *C.R. 459*.

Coastal Motorcars appeals from the trial court's judgment. *C.R. 460*; *see also Am. Not. of Appeal* (filed Dec. 15, 2014).

# STATEMENT REGARDING ORAL ARGUMENT

In the first 12 pages of this brief's argument section, Coastal Motorcars demonstrates two errors that are apparent on the face of Plaintiffs' motion for summary judgment. *See below*, at 9-20. The Court's analysis can stop there, with its review of the record essentially confined to that seven-page motion and the trial court's summary judgment order.

Assuming the Court stops there, oral argument would provide little benefit to the case.

The appellate rules do not contemplate the presentation of issues seriatim over multiple briefs. Therefore, out of caution, Coastal Motorcars has briefed additional issues – including the sufficiency of the evidence to support a summary judgment, *see below*, at 21-50, and whether the failed delivery of Plaintiffs' summary judgment motion and notice of hearing require setting the summary judgment aside. *See below*, at 51-66. Because those additional issues address additional parts of the record, oral argument may aid the Court's decisional process on those issues.

# ISSUES PRESENTED

The following issues are presented by this appeal:

1. Did the trial court commit any error by awarding the summary judgment? Do the errors require reversal of the entire summary judgment, or can the summary judgment be affirmed or reformed in any part? *See below*, at 9-51.

2. Did the trial court abuse its discretion by not setting the summary judgment aside after Coastal Motorcars made its motion for new trial? *See below*, at 51-66.

# STATEMENT OF FACTS

**I. Despite a conclusory summary judgment motion and evidence that Coastal Motorcars did not receive notice, Plaintiffs obtained a no-response summary judgment.**

Mary Alice Garcia and Mary Lou Brown ("Plaintiffs") filed their motion for summary judgment on June 6, 2014. *C.R. 184.* They asked the trial court to grant a summary judgment in their favor on 16 causes of action. *C.R. 188.* Their motion did not explain how their evidence satisfied the elements of any, let alone all 16, of the causes of action. *Id.* Their motion did not claim any particular amount of damages. *Id.*

Plaintiffs filed their motion for summary judgment nine days after the trial court signed a May 28, 2014, order permitting Eric Stewart's withdrawal as counsel for Coastal Motorcars. *C.R. 181.* Stewart filed his motion to withdraw only one day earlier. *C.R. 177.* Plaintiffs attempted to serve their motion for summary judgment and a notice of hearing on a post-office box that Stewart identified as Coastal Motorcars' "last known address." *C.R. 177, 190, 408.*

Coastal Motorcars did not receive the motion and notice of hearing. *C.R. 433* (Allen aff.), *494* (returned envelope). Postal Service tracking records contain the notation "Moved, Left no Address" dated June 16, 2014, and show that the item was "delivered" on June 17, 2014, within a zip code

1

(78404) that corresponds to the office of Plaintiffs' counsel but not the post-office box (78466). *C.R. 436; compare C.R. 174* (showing counsel's address). The envelope bears the Postal Service's stamp "UNDELIVERABLE AS ADDRESSED, FORWARDING ORDER EXPIRED" and a stamp of Plaintiffs' counsel that says "Received Denny Barre." *C.R. 494.*

Coastal Motorcars had sold its BMW of Corpus Christi dealership in December 2012. *C.R. 431-432.* Coastal Motorcars closed the post office box in January or February 2014 because mail was no longer arriving there and the dealership's new owner did not want the box. *Id.* Coastal Motorcars continued to maintain a registered agent and office in Houston. *C.R. 432, 434, 438.*

Even though Stewart supplied a bad "last known address," Plaintiffs went forward with the July 1, 2014, hearing on their motion for summary judgment. *R.R. 2:4.* Plaintiffs told the trial court that "[n]o response is forthcoming" but did not mention that the Postal Service returned the service copy of the motion and notice of hearing. *Id.*

The trial court granted Plaintiffs' motion for summary judgment. *R.R. 2:6* (oral ruling); *C.R. 415* (order). Even though the motion did not expressly request damages or attorney fees, *C.R. 184-190*, the summary judgment

2

awarded "$22,707.43 as economic damages," "$68,122.29 as additional damages," $72,762.94 in trial-court attorney fees, and additional amounts for appellate attorney fees. *C.R. 415-416.* None of those amounts are stated in the summary judgment motion. *See C.R. 184-190.*[1]

## II. Plaintiff Brown purchased a BMW 528i from Coastal Motorcars, and Plaintiffs assert that problems arose after the sale.

Coastal Motorcars sold a 2008 BMW 528i automobile ("the 528i") to Mary Lou Brown on October 19, 2011. *C.R. 196.* Brown traded in another vehicle, of the same year and model, that had more miles. *C.R. 192, 196.*

The sale price for the 528i was $37,890.25. *C.R. 196.* Brown purchased extended warranty and maintenance contracts for $2,880.00 and $1,995.00. *Id.* Taxes and fees brought the total balance due to $43,206.85. *Id.* Because Brown had no equity in her trade-in vehicle, she financed the entire $43,206.85 with a 72-month loan. *C.R. 196, 198-200.*

Although the sale documents identify Brown as the owner, Garcia claims that she "was always the intended exclusive driver and user of the vehicle." *C.R. 192.*

Garcia alleges that Coastal Motorcars failed to disclose that the 528i had been in a prior wreck that caused "frame/unibody damage." *C.R. 193.*

---

[1] Only the following dollar amounts appear in the motion: $48,534.48, $6,000, and $24,500. *C.R. 185-186.*

She further alleges that she began to experience problems with the 528i shortly after the purchase, that she took the vehicle to Coastal Motorcars' dealership "a number of times," that Coastal Motorcars refused her request for a similar automobile as a replacement, and that another dealership would not accept the 528i as a trade-in. *C.R. 192-193.*

**III. Plaintiffs sued Coastal Motorcars and, after Coastal Motorcars' counsel withdrew, obtained the summary judgment.**

Plaintiffs sued Coastal Motorcars on February 5, 2013. *C.R. 1.* After Coastal Motorcars answered the suit, *C.R. 28*, some discovery took place. *See e.g., C.R. 66* (deposition certificate) *105-149* (discovery responses). The trial court signed an order setting the case for trial on September 1, 2014. *C.R. 159.*

On May 27, 2014, Stewart filed his motion to withdraw as counsel for Coastal Motorcars. *C.R. 177.* The motion noted that Coastal Motorcars did not consent to withdrawal. *Id.* Stewart represented that a copy of the motion "has been delivered to the Defendant[,]" but he did not state when or how the motion was delivered. *Id.* Stewart provided "P.O. Box 60169" in Corpus Christi as the "last known address" for Coastal Motorcars, *id.*, even though Coastal Motorcars had closed that post-office box months earlier. *C.R. 431-*

4

*432*. Nothing in the record shows that Coastal Motorcars actually received the motion or the withdrawal order.

One day after Stewart filed the motion, the trial court signed an order permitting Stewart's withdrawal. *C.R. 181*. On the same day, the trial court also signed an order compelling mediation by July 9, 2014. *C.R. 182-183*.

As described above, at 1, nine days after the withdrawal and mediation orders, Plaintiffs filed their motion for summary judgment. Also, as described above, at 1-2, Coastal Motorcars did not receive the motion or the notice, which the Postal Service returned to Plaintiffs' counsel on June 17, 2014. And two weeks later on July 1, 2014, Plaintiffs went forward with the summary judgment hearing anyway and obtained the summary judgment. *See above*, at 2-3.

Plaintiffs' counsel then e-mailed the judgment to Coastal Motorcars' principal Art Allen. *C.R. 431*.[2] Plaintiffs' counsel did not e-mail the motion for summary judgment or the notice of hearing to Allen before obtaining the summary judgment. *Id.*[3]

---

[2] Allen is the president, the secretary, the registered agent, and a director of Coastal Auto Enterprises Inc., which is the general partner of Coastal Motorcars Ltd. *C.R. 431, 439*.

[3] Plaintiffs requested an abstract of judgment and provided the district clerk with a different "last known address" for Coastal Motorcars: 4225 South Staples Street in Corpus Christi. *C.R. 418*. That was the address of the BMW dealership, *see, e.g., C.R. 196* (sale document), that Coastal Motorcars sold in December 2012. *C.R. 432*. That was

5

**IV. Coastal Motorcars unsuccessfully moved for a new trial.**

Coastal Motorcars filed a sworn motion for new trial on July 31, 2014. *C.R. 421, 429.* In addition to raising other matters, Coastal Motorcars denied receipt of Plaintiffs' motion for summary judgment and notice of hearing. *C.R. 423, 431-432.*

The trial court heard the motion for new trial on September 18, 2014. *R.R. 3:4.* Plaintiffs' counsel did not appear at the hearing, and the trial court granted the motion. *R.R. 3:4-6; C.R. 450.*

Later that day, Plaintiffs moved to set aside the order granting a new trial. *C.R. 451.* Plaintiffs argued that, on September 15, 2014, the motion for new trial "was overruled by operation of law, rendering moot any hearing on Defendant's [Coastal Motorcars'] motion." *C.R. 451.*[4]

Plaintiffs' counsel also claimed a lack of notice of the September 18 hearing. *C.R. 452.* Plaintiffs' counsel said that the notice of hearing had an incorrect digit, identifying Plaintiffs' fax number as "361-88*4*-4079" instead

---

also the former address of Coastal Motorcars' registered office, and Coastal Motorcars had changed that address in March 2013. *C.R. 438.*

[4] Plaintiffs' mootness argument was wrong. Although a motion for new trial is overruled by operation of law on the 75th day after a signed judgment, TEX. R. CIV. P. 329b(c), the trial court had plenary power to grant the motion or otherwise modify or vacate the judgment for another 30 days. TEX. R. CIV. P. 329b(e); *see also L.M. Healthcare Inc. v. Childs*, 929 S.W.2d 442, 444 (Tex. 1996) (discussing Rule 329b(c, e)). September 18, 2014, was only the third day of that 30-day period.

of "361-88**3**-4079." *Id.; see also C.R. 455* (notice of September 18 hearing).

Plaintiffs argued:

> Defendant failed to provide notice of any hearing in violation of Texas law and in violation of Plaintiffs' fundamental due process rights.

*C.R. 453.*

Plaintiffs sent notice of a September 25, 2014, hearing by fax and e-mail. *C.R. 455-458.* The hearing did not occur. The trial court nonetheless signed an order that day that stated that the September 18 order "is withdrawn and vacated." *C.R. 459.*

That same day, Coastal Motorcars noticed its appeal. *C.R. 460; see also Am. Not. of Appeal* (filed Dec. 15, 2014).

# SUMMARY OF THE ARGUMENT

Plaintiffs' motion for summary judgment mentioned their causes of action but did not state any grounds for summary judgment on any of those causes of action. That alone is fatal to the grant of summary judgment. Plaintiffs' motion also failed to request damages or state summary judgment grounds for damages, and because the damages are not liquidated, this too requires reversal of the entire summary judgment. *See below*, at 9-21.

Nor did Plaintiffs' evidence establish a right to summary judgment on any of their liability theories or on their damages. Absent sufficient summary judgment proof of both liability and damages, the entire summary judgment must be reversed. *See below*, at 21-51.

The trial court abused its discretion by not setting aside the summary judgment after Coastal Motorcars moved for a new trial. Coastal Motorcars did not receive adequate notice of Plaintiffs' motion for summary judgment or of the hearing date. Coastal Motorcars also established an excusable accident or mistake that requires setting aside the summary judgment. *See below*, at 51-66.

# ARGUMENT

## I. The trial court erred by granting summary judgment on a motion that did not state grounds for the judgment.

The trial court's summary judgment cannot be sustained because Plaintiffs' motion for summary judgment failed to state any grounds for summary judgment on any of Plaintiffs' 16 causes of action or for any award of damages and attorney fees.

### A. A trial court cannot grant a traditional summary judgment by default; rather, the motion must state sufficient grounds and have sufficient evidentiary support.

Because Plaintiffs moved for summary judgment on their own causes of action, *C.R. 188*, Plaintiffs' motion was a traditional motion for summary judgment. TEX. R. CIV. P. 166a(a, c).[5]

A traditional motion for summary judgment "must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone." *Science Spectrum Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). This is an express requirement of the rule: "The motion for summary judgment shall state the specific grounds therefor." TEX. R. CIV. P. 166a(c). "The movant must establish its right to summary judgment on the

---

[5] Plaintiffs did not assert "that there is no evidence of one or more essential elements of a claim or defense on which [Coastal Motorcars] would have the burden of proof at trial[,]" as would be required for a no-evidence motion. TEX. R. CIV. P. 166a(i) (quoted).

issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law." *Rhone-Poulenc Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

The movant therefore bears an initial burden of pleading summary judgment grounds and then proving them. "But if the movant does not satisfy its initial burden, the burden does not shift and the non-movant need not respond or present any evidence." *Amedisys Inc. v. Kingwood Home Health Care L.L.C.*, 437 S.W.3d 507, 511 (Tex. 2014).

That is, "the non-movant's failure to except or respond cannot supply by default the grounds for summary judgment or the summary judgment proof necessary to establish the movant's right" to summary judgment. *McConnell v. Southside I.S.D.*, 858 S.W.2d 337, 342 (Tex. 1993).

### B. The grounds must be in the motion itself and must show how the evidence establishes or negates the elements of a claim or defense.

Grounds for summary judgment must be "expressly presented in the motion for summary judgment itself"; otherwise, "the motion is legally insufficient as a matter of law." *McConnell*, 858 S.W.2d at 342. "In other words, in determining whether grounds are expressly presented, we may not rely on briefs or summary judgment evidence." *Science Spectrum*, 941 S.W.2d at 912. Nor may a court "read between the lines, infer or glean from

10

the pleadings or the proof any grounds for granting the summary judgment other than those grounds expressly set forth before the trial court in the motion for summary judgment." *McConnell*, at 343 (quot. omitted).[6]

A plaintiff who seeks summary judgment must "conclusively establish all essential elements of [the plaintiff's] cause of action." *MMP Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). This requires the plaintiff to "discuss the elements of the theories" on which he relies to establish the defendant's liability. *Madisonville State Bank v. Canterbury Stuber Elder Gooch & Surratt P.C.*, 209 S.W.3d 254, 259 (Tex. App. – Dallas 2006, no pet.).

A conclusory discussion of a cause of action does not "***show*** that … there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law … ." TEX. R. CIV. P. 166a(c) (emph. added). For example, a plaintiff's motion was legally insufficient where – despite having "detail[ed] the voluminous evidence" – the motion's discussion of a conversion claim was the following:

> Therefore, as a matter of law, the $ 59,424.82 represented by the Checks, was taken by the Firm subject to MSB's security interest, the Firm has converted the $59,424.82 by failing to turn it over to MSB on demand, and MSB is entitled to judgment against the Firm for the $59,424.82.

---

[6] A "non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support summary judgment." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

11

*Madisonville*, at 259 (int. punc. omitted). In another case, a plaintiff's motion was held insufficient as to a fraud claim even though the motion mentioned the fraud claim and said that the motion "embraces all of the causes of action referred to above[.]" *Maan v. First ATM Inc.*, No. 3-06-698-CV, 2008 WL 5210923, *6 (Tex. App. – Austin Dec. 12, 2008, no pet.). While the motion identified and discussed the elements of a breach of contract claim, the motion did not offer any similar discussion of the fraud claim. *Id.*

Identifying the elements of a cause of action is insufficient because the motion must also "show" that each element is satisfied. *See, e.g., Warren v. U.S. Bank N.A.*, No. 2-08-256-CV, 2009 WL 485677, *3 (Tex. App. – Fort Worth Feb. 26, 2009, no pet.); *see also* TEX. R. CIV. P. 166a(c) (quoted). For example, a plaintiff's motion that "correctly stated that a declaratory judgment action is only available where there is a justiciable controversy" was insufficient as a matter of law because the motion "failed to specify any justiciable controversy existing in [the] case." *Warren*, at *3.

Nor may a movant plaintiff rely on any "recitation of facts" or "on the attached summary judgment evidence to provide the grounds for the motion." *Bank of Am. N.A. v. Eisenhauer*, No. 13-09-4-CV, 2010 WL 2784031, *5 (Tex. App. – Corpus Christi July 15, 2010, no pet.). For

12

example, an eight-page motion with 229 pages of evidence was insufficient because the motion did not state grounds for awarding summary judgment to a plaintiff on his breach-of-contract claim. *Id.*

Even a motion that "details the voluminous evidence" is no substitute for a motion that identifies the elements of the causes of action and shows that the elements are satisfied. *Madisonville*, at 259 (quoted, motion held insufficient); *see also Eisenhauer*, at *6 (motion held insufficient).

These principles are not unique to plaintiffs. For example, a defendant's motion was insufficient where the defendant provided a "mere recitation of 'undisputed' facts" and only "set forth the two elements" that those facts supposedly negated. *Becerra v. Ball*, No. 13-10-361-CV, 2011 WL 3366361, *4 (Tex. App. – Corpus Christi Aug. 4, 2011, no pet.). Because the defendant's motion failed to "provide any explanation of how the 'undisputed facts' conclusively disproved the elements[,]" the motion did not "expressly state the grounds or reasons" for summary judgment. *Id.* As a result, the burden never shifted to the plaintiff to respond to the motion. *Id.*

***C. Plaintiffs' motion for summary judgment did not state any grounds that would establish any of their liability theories.***

Like the motions in *Madisonville, Eisenhauer*, and *Becerra*, Plaintiffs' motion for summary judgment discussed evidence in the summary judgment record. *C.R. 185-189.* But those cases explain that discussing the evidence is not the same as "stat[ing] the specific grounds" for summary judgment. *See above*, at 11-13 (discussing cases); *see also* TEX. R. CIV. P 166a(c) (quoted).

As seen in *Warren* and *Becerra*, identifying the elements of a cause of action is insufficient if the motion does not explain how each element is proven or disproven as a matter of law. *See above*, at 12-13 (discussing cases). Plaintiffs' motion did not even identify the elements of their causes of action, let alone show how the evidence satisfied those elements.

Plaintiffs may have mentioned their causes of action, but they did not "state the specific grounds" that would entitle them to summary judgment on those causes of action. TEX. R. CIV. P. 166a(c) (quoted); *compare Madisonville*, 209 S.W.3d at 259, *and Maan*, 2008 WL 5210923 at *6. The ***only*** mention of Plaintiffs' causes of action appeared in the first paragraph of the "Relief Requested" section of their motion, where Plaintiffs said:

> The pleadings of the parties filed herein together with the attached Exhibits show that there is no genuine issue as to any material fact in this Cause with regard to Plaintiffs' causes of action against Defendant for violations of the DTPA, breach of contract, fraud,

14

> unconscionability, conversion, negligence, negligent misrepresentation, gross negligence, common law fraud and fraud by non-disclosure, quantum meruit, quasi contract, assumpsit, detrimental reliance, promissory estoppel, unjust enrichment, and money had and received as described above. Therefore, Plaintiffs are entitled to judgment against Defendant as a matter of law on each of these causes of action.

*C.R. 188.* As the above-cited cases show, such a statement is not enough. *See above*, at 11-13.

Plaintiffs' motion did not present any grounds for summary judgment on any of their 16 causes of action. That makes their motion "legally insufficient as a matter of law." *McConnell*, 858 S.W.2d at 342, *quoted in Madisonville*, at 259. The trial court erred by granting a legally insufficient summary judgment motion. *See, e.g., Eisenhauer*, at *5.

### D. Plaintiffs' motion did not support a damages award.

**1. The trial court could not award damages on a motion that neither requested damages nor stated grounds for a damages award.**

Plaintiffs' motion for summary judgment did not expressly ask for a damages award – let alone for the specific amounts awarded. *See C.R. 188-189.* Plaintiffs asked for such things as "the complete relief requested by them," *C.R. 188*, "all relief requested in its [sic] Original Petition and Motion for Summary Judgment," *C.R. 189*, and "such other and further relief … to which they may show themselves to be justly entitled." *Id.*

15

To treat those statements as a request for damages would require a court to "read between the lines" or "infer or glean from the pleadings or proof" to identify grounds for a summary judgment on damages. *McConnell*, 858 S.W.2d at 343 (quot. omitted). A trial court may not do that. *Id.* Rather, a trial court may only grant summary judgment on "grounds expressly set forth" in the summary judgment motion itself. *Id.* A party's pleadings and summary judgment evidence is no substitute for a ground stated in the motion. *See, e.g., Torres v. Garcia*, No. 4-11-822-CV, 2012 WL 3808593, *5 (Tex. App. – San Antonio Aug. 31, 2012, no pet.) (without ground for attorney fees, award of attorney fees was error). Even mentioning a right to damages in a prayer for relief would not suffice, but Plaintiffs did not do even that much. *See Trebesch v. Morris*, 118 S.W.3d 822, 827 (Tex. App. – Fort Worth 2003, pet. den.) ("mere mention of attorneys' fees in the prayer" of motion held insufficient).

By awarding "economic" and "additional" damages, *C.R. 415*, the trial court erred by granting relief on grounds that were not stated in the summary judgment motion. The same is true about awarding damages in amounts that are not stated anywhere in the motion.

Moreover, a "trial court cannot grant more relief than was requested by a motion for summary judgment." *Muston v. Nueces County Sheriff's*

*Dept.*, 122 S.W.3d 469, 471 (Tex. App. – Corpus Christi 2003, no pet.). The trial court did exactly that by awarding damages on a motion that did not expressly request damages. The trial court also erred by awarding damages in specific amounts when the motion did not request any particular amount.

### 2. Because the alleged damages are unliquidated, any error as to damages requires a reversal of the entire summary judgment.

The erroneous award of damages requires a remand on liability as well. An appellate court "may not order a separate trial solely on unliquidated damages if liability is contested." TEX. R. APP. P. 44.1(b).

Plaintiffs' summary judgment motion did not identify any of the damages awarded as liquidated damages. *See C.R. 184-190.* Nor did the motion provide any method for calculating damages.

At the summary judgment hearing, Plaintiffs' counsel claimed that the motion sought "economic damages equivalent to the difference between what she's required to pay for the vehicle and what they [Coastal Motorcars] paid for it at auction." *R.R. 2:5-6.* Such a contention is nowhere in the motion. *See C.R. 184-190.* Nor would such a contention suffice. Plaintiffs apparently were claiming an "out of pocket" measure of damages, which "requires a comparison of the value received against the value parted with." *Leyendecker & Assocs. Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984);

17

*see also* TEX. BUS. & COM. CODE §2.714(b) (similar measure for breach of a warranty accompanying a sale of goods).

"Damages become 'liquidated' when the parties have agreed to the amount at issue." *Newsom v. State*, 922 S.W.2d 274, 281 (Tex. App. – Austin 1996, writ den.) (emph. omitted); *see also Taylor v. Bewley*, 56 S.W. 746, 747 (Tex. 1900) (absent contractual stipulation, value of item is not liquidated).[7] While Plaintiffs and Coastal Motorcars agreed to a purchase price, *C.R. 196*, Plaintiffs do not allege that they and Coastal Motorcars agreed that the 528i's actual value at the time of sale was some different amount. *See C.R. 184-190* (summary judgment motion).

As a result, any difference between the purchase price and the actual value is unliquidated.

The summary judgment also awarded "additional damages," *C.R. 415,* even though Plaintiffs' motion made no mention of "additional damages." *C.R. 184-190.* Those damages presumably correspond to the request in

---

[7] *See also, e.g., Willis v. Donnelly*, 118 S.W.3d 10, 41-42 (Tex. App. – Houston [14th Dist.] 2003) (measure of damages required determination of fair market value of corporate shares and was therefore unliquidated), *aff'd in relevant part and rev'd in part*, 199 S.W.3d 262, 275 (Tex. 2006) (approving Court of Appeals' analysis); *Scholtz v. Sigel*, 601 S.W.2d 516, 518 (Tex. Civ. App. – Dallas 1980, no writ) ("the difference between the price paid for the horse and its actual value at the time of sale" constituted unliquidated damages); *compare Buc-ee's Ltd. v. Hribek*, No. 3-08-120-CV, 2009 WL 5149922, *3 (Tex. App. – Austin Dec. 31, 2009, no pet.) (breach-of-contract damages were not determinable from parties' contract and were therefore unliquidated).

18

Plaintiffs' petition for "an award of discretionary additional damages" under the Deceptive Trade Practices Act ("DTPA"). *C.R. 16.* DTPA additional damages are unliquidated. *Henry S. Miller Co. v. Hamilton*, 813 S.W.2d 631, 634 (Tex. App. – Houston [1st Dist.] 1991, no writ).

Because Plaintiffs requested unliquidated damages, the Court cannot remand the case for a new trial on damages alone. TEX. R. APP. P. 44.1(b). The "plain language of rule 44.1(b) proscrib[es] a separate trial on unliquidated damages when liability is contested." *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001). Coastal Motorcars contested liability by making a general denial. *C.R. 28.* A general denial puts liability at issue, and "its effect extends to contesting liability in the event of remand" even if a defendant presented no "discrete challenge to liability" on appeal. *Estrada*, at 562.

As a result, where damages are not liquidated, a summary judgment for a plaintiff cannot be affirmed as to liability and reversed only as to damages. *See, e.g., Clear Lake Ctr. L.P. v. Garden Ridge L.P.*, 416 S.W.3d 527, 545 (Tex. App. – Houston [14th Dist.] 2013, no pet.) (reversing entire summary judgment without considering liability issues); *Okorafor v. Lewis*, No. 14-08-130-CV, 2010 WL 1343125, *4 (Tex. App. – Houston [14th Dist.]

Apr. 6, 2010, no pet.) (same). In such a situation, "any opinion on liability … would be advisory." *Buc-ee's*, at \*3.

Even if Plaintiffs' actual damages were liquidated, the result would be the same because DTPA additional damages are not liquidated. *See above*, at 17-20. Issues of liability, actual damages, and additional damages in DTPA cases "are inextricably intertwined" such that a new trial is required on all issues. *Equistar Chems. L.P. v. Dresser-Rand Co.*, No. 14-02-874-CV, 2008 WL 850132, \*6 (Tex. App. – Houston [1st Dist.] Apr. 1, 2008, no pet.). Those issues are not "separable without unfairness" to at least the defendant. TEX. R. APP. P. 44.1(b); *Equistar*, at \*6. This result rests on the same underlying principle as in punitive damages cases, where "the jury on remand must consider all of the evidence in order to determine whether the actions on which they base liability will support the assessment of punitive damages." *Green Tree Fin. Corp. v. Garcia*, 988 S.W.2d 776, 785 (Tex. App. – San Antonio 1999, no pet.).

In summary: "Because damages in this case are unliquidated and [the defendant] contests liability, the appropriate remedy is to remand the entire cause as to both liability and damages." *Badall v. Durgapersad*, No. 9-08-188-CV, 2009 WL 857995 (Tex. App. – Beaumont 2009, no pet.) (reversing summary judgment on all issues).

***E. Because Plaintiffs' motion did not state any ground for attorney fees, the trial court erred by awarding attorney fees.***

Even assuming that summary judgment could have been proper on liability and damages, the trial court erred by also awarding attorney fees. *C.R. 416.* The motion does not state any ground for recovery of attorney fees. *C.R. 184-190.* As in *Torres*, Plaintiffs "pled for attorneys' fees in their petition and attached an affidavit to their motion for summary judgment from an attorney in an attempt to establish the amount of reasonable and necessary attorneys' fees they believed they were due." 2012 WL 3808593 at *5. "However, as noted above, grounds for summary judgment must be expressly stated in the motion, and including a ground in the summary judgment evidence itself is insufficient." *Id.* (reversing summary judgment award of attorney fees); *see also Trebesch*, 118 S.W.3d at 827 (same).

## II. Plaintiffs' evidence did not establish a right to summary judgment.

Even if Plaintiffs had stated grounds for summary judgment, the evidence did not conclusively establish their causes of action and damages.

***A. The movant's evidence – not the lack of a response – must establish the right to summary judgment.***

Plaintiffs "had the burden to submit sufficient evidence that established on its face that 'there is no genuine issue as to any material fact' and that [they are] 'entitled to judgment as a matter of law.'" *Amedisys*, 437

21

S.W.3d at 511, *quoting* TEX. R. CIV. P. 166a(c). For example, summary judgment may not be granted if the movant supplies no evidence of an essential element or if the movant's evidence is conflicting. *See, e.g., Amedisys*, at 512 (no evidence); *Profitlive Partnership v. Surber*, 248 S.W.3d 259, 262 (Tex. App. – Fort Worth 2007, no pet.) (conflicting evidence).

"But if the movant does not satisfy its initial burden, the burden does not shift and the non-movant need not respond or present any evidence." *Amedisys*, at 511. "The trial court may not grant summary judgment by default because the nonmovant did not respond to the summary judgment motion when the movant's summary judgment proof is legally insufficient." *Rhone-Poulenc*, 997 S.W.2d at 222, *quoted in Amedisys*, at 512.

Even though Coastal Motorcars did not file a response, Plaintiffs had no right to summary judgment unless they pleaded grounds and supplied evidence to establish that right.

### B. As to damages, Plaintiffs did not show the absence of a genuine issue of material fact and a right to judgment as a matter of law.

Plaintiffs' damages are unliquidated. *See above*, at 17-20. Even where a movant plaintiff supplies evidence of unliquidated damages, generally a "trial court err[s] by awarding unliquidated damages in a summary

proceeding, because such damages are subjective and therefore cannot be proven as a matter of law." *Okorafor*, 2010 WL 1343125 at *2. "Decisions on unliquidated damages are inherently ones for the jury or judge to decide." *Badall*, 2009 WL 857995 at *2 (quot., int. punc. omitted). This case presents no exception to the general rule.

Because the damages problem affects all of Plaintiffs' causes of action and requires a reversal of the entire summary judgment, *see above*, at 19-20, Coastal Motorcars addresses that problem first.

### 1. Because Plaintiffs did not establish a right to summary judgment on the amount of their economic damages, the summary judgment must be reversed.

Neither the summary judgment motion nor the summary judgment order explain how the $22,707.43 in economic damages were calculated. *C.R. 184-190* (mot.), *415* (order). Even if a court could credit Plaintiffs' explanation at the summary judgment hearing, the "out of pocket" measure of damages was not liquidated and therefore cannot be established as a matter of law. *See above*, at 17-18 (discussing that measure).

Absent a stipulation to the 528i's actual value on the date of its sale to plaintiff Brown, a jury could reasonably conclude that the actual value fell anywhere within a range of values. *See, e.g., Barclay v. Burge*, 245 S.W.2d 1021, 1023 (Tex. Civ. App. – Beaumont 1952, no writ) (distinguishing

liquidated damages cases in affirming jury finding as to value of bull). Brown agreed to purchase the 528i for a "selling price" of $37,890.25. *C.R. 196.* Brown claims a higher price of $43,206.85, *C.R. 194*, but that amount includes, among other things, an "extended warranty contract" and an "extended maintenance contract." *C.R. 196.* If a jury could rely on that higher amount, the jury could also conclude that the extended warranty contract and extended maintenance contract added value to the transaction, whether in the original amounts of $2,880 and $1,995 or in some lesser amount. *C.R. 196.* Plaintiffs neither alleged nor offered evidence that those add-ons lacked any value. *See, e.g., C.R. 184-190* (mot.), *191-195* (Garcia aff.).

Coastal Motorcars purchased the 528i for $24,500 at an auction nearly six months earlier. *C.R. 313* (Apr. 28, 2011, auction sale contract). An auction price alone cannot establish the actual value of an item, let alone at the time of a later sale. *See, e.g., SPT Fed. Credit Union v. Big H Auto Auction Inc.*, 761 S.W.2d 800, 801-802 (Tex. App. – Houston [1st Dist.] 1988, no writ) (auction price was no evidence of boat's market value). A plaintiff must show that an earlier sale occurred under "ordinary" circumstances and under comparable "market conditions." *Preston Reserve L.L.C. v. Compass Bank*, 373 S.W.3d 652, 663 (Tex. App. – Houston [14th

Dist.] 2012, no pet.) (successful bid at foreclosure sale was "incompetent evidence of the property's fair market value"). Plaintiffs' motion did not explain how, or prove that, the auction sale price on April 28, 2011, established the 528i's actual value when Brown purchased the 528i on October 19, 2011. Plaintiffs have not even shown that the auction price is competent evidence of that fact, let alone conclusive evidence.

Even if the auction sale price were competent evidence, a jury could reasonably conclude that Coastal Motorcars added value to that amount by performing maintenance and repairs to the car before selling it to Brown nearly six months later. *See C.R. 219* (May 12, 2011, entry).

A jury could also reasonably determine the 528i's value by considering the parties' agreed-upon values for the purchased ($37,890.25) and trade-in vehicles ($35,660), which were the same year and model, and deducting reasonable amounts to account for the lost market value attributable to defects or other undisclosed conditions that existed at the time of the sale. *C.R. 192, 196.*

Plaintiffs, however, only described the 528i's problems in general terms. Garcia's affidavit made such general statements as "I began to experience problems with the vehicle" and "the vehicle has been in BMWCC's repair facility a number of times." *C.R. 192.* She said that the

25

528i has "frame/unibody damage" from "a prior wreck" but provided no details about the "nature or extent" of the damage or the effect of the damage on the vehicle's use. *C.R. 193-194.* Plaintiffs attached maintenance records to their motion, *C.R. 205-216*, but some of those records pertain to maintenance performed after Plaintiffs had driven the vehicle several thousand miles. *Compare C.R. 196* (sale contract, 23,133 mileage), *205* (repair invoice, 34,457 mileage), *206* (repair invoice, 32,358 mileage).[8]

Plaintiffs' summary judgment evidence, even considered in isolation, would leave a jury with a range of figures and significant discretion in applying the "out of pocket" measure of damages, which, as described above, at 17-18, "requires a comparison of the value received against the value parted with." *Leyendecker*, 683 S.W.2d at 373. Without testimony describing the severity of the problems, let alone attributing them to pre-sale damage, a jury could reasonably conclude that the value of the vehicle was closer to the agreed-upon $37,890.25 than the earlier auction sale price of $24,500. Even if a jury were to use the higher $43,206.85 price that included

---

[8] Plaintiffs offered no affidavit from Brown, who was the actual purchaser of the vehicle. *C.R. 196.* Garcia's affidavit says that she is "authorized to make this affidavit on behalf of Mary Lou Brown as a result of a Statutory Durable Power of Attorney." *C.R. 195.* An individual's affidavit, made on behalf of a second individual under a power of attorney, is not based on the second individual's personal knowledge and therefore is legally insufficient proof of the second individual's testimony. This arises from the general rule that "[a]n affidavit showing no basis for personal knowledge is legally insufficient." *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008).

26

the extended warranty and extended maintenance contracts, the jury could make a corresponding upward adjustment to the $24,500 amount based on the agreed value ($2,880 and $1,995) of those contracts or some lesser sum. *See above*, at 3, 24.[9]

None of those figures, however, explain the $22,707.43 in the summary judgment order. *C.R. 415.* Although Plaintiffs represented, at the summary judgment hearing, that the amount was the "difference between what she's required to pay for the vehicle and what they [Coastal Motorcars] paid for it at auction," *R.R. 2:5-6*, either that representation or Plaintiffs' calculation is wrong.

Plaintiffs have not established that "there is no genuine issue as to any material fact" and that they are entitled "to judgment as a matter of law on the issues expressly set out" for a summary judgment award of damages. TEX. R. CIV. P. 166a(c). This requires reversal of the damages award. Because Plaintiffs' damages are not liquidated, this also requires reversal of the entire summary judgment. TEX. R. APP. P. 44.1(b); *see also Profitlive*, at 262 ("we reverse the entire summary judgment"), *and above*, at 19-20 (discussing additional cases).

---

[9] Even assuming that Plaintiffs had provided competent evidence of the amount of damages, this is, at the very least, a case where "appellees' own summary judgment evidence raises a material issue of fact regarding the amount of their damages." *Profitlive*, 248 S.W.3d at 262.

### 2. Because DTPA additional damages cannot be proven as a matter of law, the summary judgment must be reversed.

The DTPA does not mandate any specific amount as additional damages. *See* TEX. BUS. & COM. CODE §17.50(b)(1). "The amount of additional damages to award after the finding [of] a violation of the DTPA is within the discretion of the trier of fact; as such, they are unliquidated damages." *Henry S. Miller*, 813 S.W.2d at 634.

Because DTPA additional damages are discretionary, they cannot be proven as a matter of law. *Compare Badall*, 2009 WL 857995 at *2 (nonpecuniary losses are not proper subjects for summary judgment).

The issue of DTPA additional damages cannot be separated from the rest of the case. *See above*, at 20. As a result, the trial court's error in granting a summary judgment that awarded such damages requires a remand of the case on all issues. *Id.*

The trial court also erred by awarding a sum of economic and additional damages that equaled four times the economic damages. *C.R. 415.* The statutory language that allows a trier of fact to "award not more than three times the amount of economic damages" means that the sum of economic and additional damages may not equal more than three times the economic damages. TEX. BUS. & COM. CODE §17.50(b)(1); *see also Jim Walter Homes Inc. v. Valencia*, 690 S.W.2d 239, 241 (Tex. 1985)

28

(construing the phrase "award not more than three times the amount of actual damages" in former version of statute). If the Court does not reverse the additional damages award, the Court must still reform the judgment to reduce that award by $22,707.43 to $45,414.86.

### C. Plaintiffs did not establish a right to summary judgment on any of their 16 causes of action.

Even if nothing mentioned so far were to require reversal, Plaintiffs nonetheless failed to show that "there is no genuine issue as to any material fact" and prove "as a matter of law" their causes of action. TEX. R. CIV. P 166a(c).

#### 1. Deceptive Trade Practices Act

The award of additional damages suggests that the ultimate basis for the trial court's summary judgment was Plaintiffs' DTPA claim. *See C.R. 415.*

Plaintiffs' motion for summary judgment did not identify any particular provision of the DTPA. *See C.R. 184-190.* The motion only mentions the DTPA in connection with a list (quoted above, at 14) of causes of action on which Plaintiffs claimed a right to summary judgment. *C.R. 188.* That mention consisted of four words: "violations of the DTPA[.]" *Id.*

Plaintiffs' petition was no more specific, offering only general references to Business and Commerce Code §17.46 (the DTPA's "laundry

29

list" provision) and general allegations of unconscionability, breach of implied warranty, and breach of express warranty. *C.R. 9-10.*

A summary judgment cannot be sustained on a violation of §17.46. A consumer may maintain an action for a §17.46 violation only if the defendant's act or practice is "specifically enumerated in a subdivision of" §17.46(b). TEX. BUS. & COM. CODE §17.50(a). Plaintiffs presented no summary judgment evidence (much less conclusive evidence) to support a violation of any of the 27 subdivisions of §17.46(b).[10]

A consumer's suit on a §17.46 violation also requires proof of reliance. *Id.* §17.50(a)(1)(B). Plaintiffs presented no summary judgment evidence of reliance, let alone conclusive evidence of reliance.

Conclusory statements are not competent evidence. *See, e.g., In re Whataburger Restaurants L.P.*, 429 S.W.3d 597, 599 (Tex. 2014). The following statement in Garcia's affidavit therefore is no evidence of reliance:

> Had either the nature or extent of the prior frame/unibody damage been disclosed to us prior to purchase, we would not have purchased the vehicle.

---

[10] An appellant need not "detail the relevant parts of the record" to address "a complete absence of evidence on critical elements" of a claim. *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 167 (Tex. 2004).

*C.R. 193.* "Generally, such testimony about what a person 'would have' done or what 'would have' happened under different circumstances is speculative and conclusory in the absence of some evidentiary support." *Whataburger*, at 599. Even with evidentiary support, when such testimony comes from an interested witness (such as Garcia), the testimony will not support a summary judgment because such state-of-mind testimony is not of a type that "could have been readily controverted." TEX. R. CIV. P. 166a(c).

Moreover, Brown was the actual buyer of the 528i. *C.R. 196* (sale contract). Garcia could not testify about Brown's reliance, even though Brown had granted Garcia a power of attorney. *See above*, at 26 fn. 8 (discussing incompetency of such testimony). The lack of evidence of Brown's reliance also precludes summary judgment.

DTPA unconscionability requires "an act or practice, which to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE §17.45(5). Plaintiffs presented no summary judgment evidence (let alone conclusive evidence) that Coastal Motorcars took advantage, to Plaintiffs' detriment, of any lack of knowledge, ability, experience or capacity of either of them – or that Coastal Motorcars did so to a grossly unfair degree. Moreover, the conflicting evidence of the vehicle's

31

value, *see above*, at 23-27, raises a fact issue as to the "grossly unfair degree" component of the claim.

Plaintiffs pleaded that the 528i breached an implied warranty of merchantability because "it would not pass without objection in the trade" and "was not fit for the ordinary purpose for which such vehicles are used." *C.R. 9-10.* Plaintiffs presented no summary judgment evidence (let alone conclusive evidence) that the vehicle was not merchantable in those ways, or in any other way, at the time of the vehicle's sale. *See* TEX. BUS. & COM. CODE §2.314(b) (listing six requirements of merchantable goods). Although plaintiff Garcia's affidavit asserts that "[s]hortly after purchase, I began to experience problems[,]" *C.R. 192*, she does not identify the problems, show that they resulted from pre-sale damage, or provide any basis for concluding that the problems rendered the vehicle unmerchantable.

Plaintiffs asserted a breach of an implied warranty to perform repair work in a good and workmanlike manner. Under that warranty, "[w]e define good and workmanlike as that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). Plaintiffs, who offered no

32

evidence of the "quality" or "manner" of the repair work, presented no summary judgment evidence (much less conclusive evidence) that this warranty was breached.

Garcia's affidavit did state the following:

> BMWCC represented that the service work would be performed in a good and workmanlike manner and was obligated to repair the vehicle in a good and workmanlike manner; this has not occurred as some of the problems continue to persist.

*C.R. 192.* Because this statement is "unsupported by underlying facts," it is conclusory and therefore "not competent summary judgment evidence." *Badall*, 2009 WL 857995 at *2. Moreover, Garcia's affidavit applies the wrong standard by treating the warranty as one focused on results instead of the manner of the work. *Melody Home*, at 354 (explaining the difference).

Regardless, breach of any repair warranty could not have been the basis for the trial court's judgment. Plaintiffs offered, belatedly at the summary judgment hearing, a damages model that made no reference to repairs. *See above*, at 17.

An essential element of a breach of express warranty claim is that the alleged warranty is "part of the basis of the bargain." Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ §2.313(a)(1-3). Plaintiffs did not present evidence (much less conclusive evidence) of any alleged warranty that was both "part of the basis

33

of the bargain" and breached. Underscoring that is the absence of any testimony from Brown, the 528i's actual buyer. *See C.R. 196* (sale contract). Moreover, the basis-of-the-bargain requirement "loosely reflects the common-law express warranty requirement of reliance." *Henry Schein Inc. v. Stromboe*, 102 S.W.3d 675, 686 fn. 23 (Tex. 2003) (quot. omitted). As discussed above, at 30-31, Plaintiffs did not conclusively establish reliance.

A consumer's DTPA claim also requires proof of producing cause. TEX. BUS. & COM. CODE §17.50(a). A producing cause is "a substantial factor in bringing about an injury, and without which the injury would not have occurred[.]" *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007). Plaintiffs presented no summary judgment evidence (let alone conclusive evidence) of producing cause.

A significant omission in the summary judgment record is the lack of evidence to link the problems that Plaintiffs encountered post-sale to the pre-sale condition of the 528i – or to link those problems to any specific DTPA violations. For example, although Garcia's affidavit speaks of "prior frame/unibody damage," *C.R. 193*, her affidavit provides no further details about the extent of that damage or how that damage was related to any problems that she later encountered.

## 2. Breach of contract

"[B]reach of contract and breach of warranty are not the same cause of action." *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991). "When a party fails to deliver as promised, a breach of contract occurs." *Chilton Ins. Co. v. Pate & Pate Enterps. Inc.*, 930 S.W.2d 877, 890 (Tex. App. – San Antonio 1996, writ den.). "Conversely, when a seller delivers non-conforming goods, it is a breach of warranty." *Id.* "Indeed, the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell." *Southwestern Bell*, at 576 (quot. omitted). The distinction "is crucial because each is a different cause of action with different remedies." *Chilton*, at 890; *see also Southwestern Bell*, at 576.

Plaintiffs did not allege that Coastal Motorcars failed to deliver the 528i. They acknowledged delivery. *C.R. 192* (Garcia aff.). They have only a claim for breach of warranty, and as discussed above, at 32-34, they have not established a right to summary judgment on a breach of warranty claim.

To any extent Plaintiffs assert a breach of contract in connection with services, as opposed to the purchase, they still did not show a right to summary judgment. "The elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the

plaintiff as a result of the breach." *Tex. Dept. of Transp. v. Crockett*, 257 S.W.3d 412, 416 (Tex. App. – Corpus Christi 2008, pet. den.). Plaintiffs did not present any summary judgment evidence (let alone conclusive evidence) of any breach in connection with services. Plaintiffs presented only a conclusory statement that repair work was not adequately performed. *See above*, at 32-33. Plaintiffs also did not present any summary judgment evidence (let alone conclusive evidence) of damages sustained as a result of any such breach. Their damage model, belatedly presented at the summary judgment hearing, made no reference to repairs. *See R.R. 2:5-6; see also above*, at 17.

### 3. Negligence and gross negligence

"Negligence actions in Texas require a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *Nabors Drilling U.S.A. Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Where a duty exists, a person must "act as a reasonable prudent person would act under the same or similar circumstances regarding any reasonably foreseeable risk." *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex. 1984).

Texas does not have a statutory disclosure requirement for pre-sale repairs to vehicles. As the U.S. Supreme Court has recognized, "reasonable

36

people may disagree about the value of a full disclosure requirement" that would apply "regardless of its actual impact on the value of the car." *BMW of N. Amer. Inc. v. Gore*, 517 U.S. 559, 570 (1996). The diversity of opinion is shown in other states' statutes that set various thresholds based on the cost of the repairs, on the ratio of the repair costs to the vehicle's full value, or on combinations of those measures. *See id.* at 569 fn. 13.

Plaintiffs did not provide any detail about the prior wreck, the damage sustained in that wreck, the extent of damage that remained at the time of sale, or the effect on the use or value of the 528i. *See above*, at 25-26, 32, 34. Plaintiffs therefore have not shown the absence of a material fact issue on breach of duty because they have not shown that reasonable persons would all agree about the necessity of and extent of disclosure. Nor did Plaintiffs present summary judgment evidence (let alone conclusive evidence) to show, in any other manner, breach of a duty to use ordinary care.

Moreover, just as Plaintiffs failed to show entitlement to summary judgment on producing cause in connection with their DTPA claim, *see above*, at 34, for the same reasons, *see id.*, they failed to do so on the proximate cause element of a negligence claim. As with producing cause, a necessary component of proximate cause is that the defendant's act or

omission was a substantial factor in bringing about an injury that otherwise would not have occurred. *Ford*, 242 S.W.3d at 45 fn. 47.

Because Plaintiffs did not show a right to summary judgment on their negligence claim, they also did not show a right to summary judgment on their gross negligence claim. Outside the worker's compensation context, "a finding of ordinary negligence is prerequisite to a finding of gross negligence." *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App. – Houston [14th Dist.] 1994, writ den.).

### 4. Fraud, fraud by nondisclosure, and negligent misrepresentation

The elements of fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

The elements of fraud by nondisclosure are: "(1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff

38

was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge." *Horizon Shipbldg. Inc. v. BLyn II Holding L.L.C.*, 324 S.W.3d 840, 850 (Tex. App. – Houston [14th Dist.] 2010, no pet.).

The elements of negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Assn. v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Reliance and causation are elements of each of these claims. As noted above, Plaintiffs did not establish reliance and producing cause in the context of their DTPA cause of action. *See above*, at 30-31 (reliance), 34 (producing cause). Plaintiffs likewise presented no evidence (let alone

39

conclusive evidence) of reliance and causation for the purpose of their fraud, fraud-by-nondisclosure, and negligent-misrepresentation causes of action.

These causes of action can only be sustained if a misrepresentation or undisclosed matter is material. *See, e.g., Jones v. Zearfoss*, _ S.W.3d _, No. 4-14-83-CV, 2015 WL 101592, *2 (Tex. App. – San Antonio 2015, no pet. hist.). Plaintiffs neither presented summary judgment evidence of materiality nor established the absence of a fact issue on materiality. For example, even though Plaintiffs say there was "prior frame/unibody damage" and a "prior wreck," *C.R. 193* (quoted), they provided no details about the prior wreck, the damage sustained in that wreck, the extent of damage that remained at the time of sale, or the effect on the use or value of the vehicle. Without that information, Plaintiffs could not show that reasonable persons would all agree about the materiality of any representation or nondisclosure. *See above*, at 36-37 (noting differences of opinion as to threshold for mandatory disclosure).

These causes of action also include culpability requirements. Fraud requires knowledge or recklessness about a statement and an intent that another rely on the statement. *See above*, at 38. Fraud by nondisclosure requires deliberate silence and an intent to induce another to take action or to refrain from acting. *See above*, at 38-39. Negligent misrepresentation

40

requires a lack of reasonable care or competence. *See above*, at 39. Plaintiffs neither presented summary judgment evidence to establish those elements, nor did they establish the absence of a fact issue on those elements.

Plaintiffs may cite a heavily redacted copy of Coastal Motorcars' interrogatory responses.[11] The unredacted portion of one response says, "I knew of damage to the vehicle but not how the damages occurred." *C.R. 387.* That response, however, does not identify *what* damage or the *severity* of any damage – and raises a fact issue about whether Coastal Motorcars knew the cause of any damage. Nor does that response establish that any misrepresentation about or failure to disclose that damage satisfied the necessary culpability requirements.

"Because this is an appeal from a summary judgment, we are required to indulge every reasonable inference in favor of the defendant-nonmovant and resolve all doubts in his favor." *Rizkallah v. Conner*, 952 S.W.2d 580, 589 (Tex. App. – Houston [1st Dist.] 1997, no writ). Indulging any reasonable inference in favor of Coastal Motorcars, one could infer that any nondisclosure was unintentional or not negligent. *See, e.g., id.* (evidence permitted inference that defendant "was merely an incompetent mechanic"

---

[11] Plaintiffs attached heavily redacted interrogatory responses to their motion for summary judgment. *C.R. 386-388.* Some unredacted portions started mid-sentence. *Id.*

and did not act knowingly); *see also above*, at 36-37 (discussing disagreement about what extent of damage should require disclosure).

## 5. Unconscionability

Unconscionability is not a stand-alone cause of action. *See Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 213 (Tex. App. – Fort Worth 1984, no writ). The trial court could not, without error, grant summary judgment on a cause of action that does not exist.

Plaintiffs' petition alleged that "there was a gross disparity between the value received by Plaintiffs and consideration paid by Plaintiffs; for this reason, this transaction was unconscionable." *C.R. 13*. As discussed above in the context of damages, Plaintiffs' summary judgment evidence did not show the absence of a genuine issue of material fact concerning any disparity, let alone a gross disparity. *See above*, at 23-27. For example, the lack of evidence of the severity of any problems encountered, of a link between those problems and the pre-sale condition of the 528i, and the effect of those problems on the 528i's value preclude summary judgment on this claim. *See above*, at 25-26, 32, 34.

## 6. Conversion

"The elements of conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant

assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for the return of the property." *Crockett*, 257 S.W.3d at 416. Plaintiffs did not present any summary judgment evidence (let alone conclusive evidence) of either of the first two elements.

Plaintiffs allege that Coastal Motorcars converted "the excess value paid" for the 528i. *C.R. 13*. This, however, is a claim for "alleged indebtedness that may be discharged by the payment of money generally." *Rente Co. v. Truckers Express Inc.*, 116 S.W.3d 326, 332 (Tex. App. – Houston [14th Dist.] 2003, no pet.). Such a claim cannot be sustained on a conversion theory. *Id.*

Where a plaintiff alleges conversion of money, the money must have been "(1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App. – Dallas 1992, writ den.). Plaintiffs neither alleged nor presented summary judgment evidence (let alone conclusive evidence) of any of those four requirements. The sale documents contain no terms that would satisfy those requirements. *See C.R. 196-204.*

Moreover, Brown took a loan to purchase the 528i. *See above*, at 3. Plaintiffs have not shown that they paid the loan in full, let alone what portion of the loan they have paid. Plaintiffs cannot maintain an action for conversion of funds that never left their possession. Plaintiffs have not shown a right to the specific amount of $22,707.43 on a conversion theory. *C.R. 415* (summary judgment order).

For any of those reasons, the summary judgment cannot be sustained on a conversion cause of action.

### 7. Quantum meruit, quasi contract, assumpsit, detrimental reliance, promissory estoppel, unjust enrichment, and money had and received

Plaintiffs' motion for summary judgment also alleged, without specific grounds, a right to summary judgment on their "quantum meruit, quasi contract, assumpsit, detrimental reliance, promissory estoppel, unjust enrichment, and money had and received" claims. *C.R. 188.* Plaintiffs' petition described the first six theories as means "to collect the reasonable value of the excess value paid by Plaintiffs to Defendant as well as the value of Plaintiffs' out of pocket expenses … ." *C.R. 14.* An initial problem, precluding summary judgment, is that Plaintiffs have not shown the absence of a material fact issue as to the "excess value," *see above*, at 23-27, and

44

their belatedly-offered damages model made no references to any other "out of pocket expenses." *See above*, at 17; *see also R.R. 2:5-6.*

A second problem is that these are all equitable theories. "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Fortune Production Co. v. Conoco Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *see also, e.g., Chilton*, 930 S.W.2d at 889 (quantum meruit). The sale contract identifies each side's obligations. *C.R. 196-204.* Plaintiffs are therefore foreclosed from relying on equitable theories, and a summary judgment awarding relief on those theories is error.

"To recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Plaintiffs did not present summary judgment evidence (let alone conclusive evidence) to support any of those four elements. The evidence contradicts at least the first three elements because Coastal

Motorcars provided the 528i to Brown, not the other way around. *C.R. 196-204* (sale documents).

"Unjust enrichment claims are based on quasi-contract." *Fortune*, at 683. "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory," *id.* at 684, and no exception is alleged or proven here. The sale agreement, *C.R. 196*, precludes any quasi-contract or unjust enrichment claim.

Moreover, a quasi-contract "is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." *Fortune*, at 684.[12] Plaintiffs' motion for summary judgment neither alleged nor proved, as a matter of law, what obligation the law should impose. *See C.R. 184-190.* Plaintiffs presented no summary judgment evidence (let alone conclusive evidence) to support enforcement of an implied obligation on any terms that were different from those in the sale agreement.

Even if an unjust enrichment claim were available, Plaintiffs have not established the claim as a matter of law. "A party may recover under the

---

[12] *See also Amoco Production Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. – El Paso 1997, no writ): "The unjust enrichment doctrine applies the principles of restitution to disputes **which are not governed by a contract** between the contending parties." (Emph. added.)

46

unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels*, at 41. As discussed above in connection with their DTPA and fraud claims, Plaintiffs have not established the lack of a material fact issue as to fraud or the taking of an undue advantage. *See above*, at 31-32 (DTPA), 38-42 (fraud). Plaintiffs' own evidence raised a fact issue on a lack of duress, as the stated reason for entering the transaction was not duress but to "have the same automobile but with less miles." *C.R. 192.*

"The implied contract action for money had and received is a cause of action for debt not evidenced by a writing." *Amoco*, at 164. Because the parties had a written contract for sale of the 528i, *C.R. 196*, Plaintiffs cannot prevail on this theory.

Moreover, a claim for money had and received requires that "the defendant obtains money which in equity and good conscience belongs to the plaintiff." *Amoco*, at 164. As with their conversion claim, Plaintiffs have not established what amount of money they have actually paid. *See above*, at 44. Nor did they present summary judgment evidence (let alone conclusive evidence) of what portion of the amount paid should, in equity and good conscience, be returned to them. For example, a jury could reach different conclusions about the 528i's value, even if the jury only considered

47

Plaintiffs' summary judgment evidence. *See above*, at 23-27. Plaintiffs therefore have not shown a right to summary judgment on their money-had-and-received claim.

Plaintiffs petition and summary judgment motion merely allege "assumpsit" without any further elaboration. *C.R. 14, 188.* Assumpsit is "[a]n express or implied promise, not under seal, by which one person undertakes to do some act or pay something to another" or "[a] common-law action for breach of such a promise or for breach of a contract[.]" BLACK'S LAW DICTIONARY (10th ed.), at 148. To any extent Plaintiffs purport to rely on an express promise, the same reasons that made summary judgment inappropriate on their DTPA breach-of-warranty and their breach-of-contract theories make summary judgment inappropriate on an assumpsit theory. *See above*, at 32-34 (breach of warranty), 35-36 (breach of contract). To any extent Plaintiffs purport to rely on an implied promise, the same reasons that made summary judgment inappropriate on their quantum-meruit, quasi-contract, unjust-enrichment, and money-had-and-received theories also make summary judgment inappropriate on an assumpsit theory.

Courts "evaluate a detrimental reliance claim under the same criteria as a promissory estoppel claim. It is not a distinct cause of action." *Garcia v. Lucero*, 366 S.W.3d 275, 281 (Tex. App. – El Paso 2012, no pet.).

"[P]romissory estoppel becomes available to a claimant only in the absence of a valid and enforceable contract." *Doctors Hosp. 1997 L.P. v. Sambuca Houston L.P.*, 154 S.W.3d 634, 636 (Tex. App. – Houston [14ᵗʰ Dist.] 2004, pet. abated). The sale contract, *C.R. 196*, precludes any promissory estoppel claim.

Even setting that problem aside, Plaintiffs have not established a right to summary judgment on a promissory estoppel claim. "The elements of promissory estoppel are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to her detriment." *Garcia*, at 280. As discussed above in connection with the DTPA claim, Plaintiffs have not shown the absence of a material fact issue on reliance. *See above*, at 30-31.

### D. Plaintiffs did not establish a right to summary judgment on liability for DTPA additional damages.

An award of DTPA additional damages requires that a defendant acted "knowingly" or "intentionally," as those terms are defined in the DTPA. TEX. BUS. & COM. CODE §17.45(9, 13), 17.50(b)(1). Both require "actual awareness" of the falsity, deception, or unfairness of an act or practice or "actual awareness" of a breach of warranty. *Id.* §17.45(9, 13).

As discussed above in connection with the fraud claim, the summary judgment record does not show the absence of a fact issue and a right to judgment as a matter of law on any such culpability element. *See above*, at 40-42. For example, the evidence does not establish that Coastal Motorcars had actual awareness of the extent or cause of any damage to the 528i. *See id*. Moreover, a court must "indulge every reasonable inference" in opposition to the summary judgment, *Rizkallah*, at 589, and without conclusive evidence to the contrary, a court must conclude that the record permits an inference that the conduct was not knowing or intentional. *Id.* (evidence permitted reasonable inference that mechanic was merely "incompetent" as opposed to a knowing violator).

### *E. Unless Plaintiffs established a right to summary judgment on a theory that permits recovery of attorney fees, the award of attorney fees is error.*

Plaintiffs' summary judgment motion not only failed to identify what liability theories entitled them to attorney fees, they failed to request any attorney fees at all in the motion. *See above*, at 21. That alone is fatal to the attorney fee award.

Even if any of Plaintiffs' liability theories could be sustained, Plaintiffs may not recover attorney fees unless the theory is one that will allow an attorney fee award. DTPA, breach of contract, and quantum meruit

50

claims can support an award of attorney fees. *See* TEX. BUS. & COM. CODE §17.50(d) (DTPA); TEX. CIV. PRAC. & REM. CODE §38.001(1-3, 8) (attorney fees for claims based on services, labor, material, and contracts). Plaintiffs identified the two corresponding statutes in their petition and no other statute to authorize an award of attorney fees. *C.R. 17*. The trial court's award of attorney fees cannot stand on any other legal theory that Plaintiffs asserted.

Claims based on "implied or quasi-contract" are not eligible for attorney fee awards under the statutory provision (§38.001(8)) that permits attorney fees for contract claims. *Amoco*, at 165-166. Although the Court has allowed attorney fees for promissory estoppel claims under that provision, the more sound and correct rule is that a promissory estoppel claim is inconsistent with recovery on a contract and therefore will not support an award of attorney fees. *Doctors Hosp.*, at 639; *contrast Corpus Christi Day Cruise L.L.C. v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d 303, 314-315 (Tex. App. – Corpus Christi 2012, pet. den.).

## III. The trial court abused its discretion by not setting the summary judgment aside.

### A. *Due process requires setting aside the summary judgment.*

"Absence of actual or constructive notice of the submission of a summary judgment motion violates a party's due process rights under the Fourteenth Amendment to the United States Constitution." *Garcia v.*

51

*Escobar*, No. 13-13-268-CV, 2014 WL 1514288, *3 (Tex. App. – Corpus Christi Apr. 15, 2014, pet. den.). Due process requires that notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Med. Ctr. Inc.*, 485 U.S. 80, 84-85 (1988).

Uncontroverted evidence shows that Coastal Motorcars did not have actual notice of Plaintiffs' motion for summary judgment or the hearing date. Coastal Motorcars submitted Allen's affidavit that denied notice and explained that the post-office box was a former address that had been discontinued several months earlier. *C.R. 431-432.* Coastal Motorcars submitted Postal Service tracking records showing that the package containing the motion and notice of hearing was not delivered to the post-office box. *C.R. 436; see also above*, at 1-2. The trial court was bound to accept this evidence as true unless Plaintiffs requested an evidentiary hearing. *Smith v. Holmes*, 53 S.W.3d 815, 818 (Tex. App. – Austin 2001, no pet.).[13]

---

[13] "On a motion for new trial, the trial court is bound to accept as true the affidavits of the movant, unless the opponent requests an evidentiary hearing." *Smith*, at 818.

Plaintiffs' response included a copy of the envelope used for service. *C.R. 494*. The envelope, which had markings showing its return to Plaintiffs' counsel, *see above*, at 2, only reinforced that actual notice was not achieved.

Nor did Plaintiffs obtain constructive notice. In responding to the motion for new trial, Plaintiffs argued that they had constructive notice because Coastal Motorcars "was negligent in not complying with TEX. CIV. PRAC. & REM. CODE §30.015(d)[,]" *C.R. 475*, which states:

> If the party's address changes during the course of a civil action, the party or the party's attorney must provide the clerk of the court with written notice of the party's new address.

The Texas Supreme Court has explained, however, that a failure to "keep the court and parties apprised of [a] correct and current address" is not governed by a negligence standard. *Mathis v. Lockwood*, 166 S.W.3d 743, 746 (Tex. 2005). "[E]ven assuming there is such a duty," the Texas Supreme Court explained, "unless noncompliance was intentional rather than a mistake, due process requires some lesser sanction than trial without notice or an opportunity to be heard." *Id.*[14]

---

[14] Because this rule "turns on an actor's state of mind[, its] application may require a different result when the actor is not a lawyer." *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (withdrawal of deemed admissions and leave for late summary-judgment response).

Nothing in the record shows that Coastal Motorcars intentionally failed to comply. Although §30.015 appears to require each party to provide a "current residence or business address" to the clerk when filing its "initial pleading," TEX. CIV. PRAC. & REM. CODE §30.015(a, c), that statute – which does not require notice to other parties – is often overlooked.[15] During the time that Coastal Motorcars was represented by counsel, Coastal Motorcars was entitled to rely on Stewart for compliance with the requirement. Nothing in the record indicates that Stewart's failure to do so was intentional or that any failure should be attributed to the client.[16] Coastal Motorcars discontinued the post-office box address three to four months before Stewart moved to withdraw from the case. *See above,* at 1-2, 4.

Coastal Motorcars' compliance with another notice-of-address requirement indicates that Coastal Motorcars did not intend to avoid service of legal documents generally, let alone in Plaintiffs' case. After Coastal Motorcars sold its Corpus Christi BMW dealership, it notified the Secretary of State of a new registered office. *C.R. 438; see also* TEX. BUS. ORG. CODE

---

[15] The statute originally required that the clerk keep the address confidential. TEX. ACTS (75th Leg.), Ch. 887 (1997).

[16] For example, although counsel conducts discovery for his or her client, "a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation." *TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

54

§5.202 (requiring notice of such change). Coastal Motorcars did that in March 2013, well over a year before Plaintiffs filed their motion for summary judgment. *C.R. 184, 438.*

Plaintiffs rely on Stewart's representation that the post-office box was Coastal Motorcars' last known address. *C.R. 468.* Stewart's representation cannot be imputed to Coastal Motorcars. When Stewart filed a contested motion to withdraw, he was acting adversely to Coastal Motorcars. While an attorney's statements ***for a client*** may sometimes be treated as the client's statements, *see, e.g., Bay Area Healthcare Group Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (statements in superseded pleadings), the same is not true when the attorney is taking action ***against a client*** by filing a contested motion to withdraw.

Nor does the record establish that Coastal Motorcars intentionally used Stewart's error to avoid service of documents – or that Coastal Motorcars even knew of the error before summary judgment was rendered.

Stewart's motion to withdraw was hastily presented. He filed the motion only one day before it was heard. *See above*, at 1, 5. Before moving to withdraw, Stewart had a professional duty that included "giving reasonable notice to the client" and "allowing time for employment of other

counsel[.]" TEX. DISC. R. PROF. CONDUCT 1.15(d). Nothing in the record indicates that Stewart did so before withdrawing.[17]

Although Rule of Civil Procedure 10 required delivery of the motion "in person or mailed to the party's last known address by both certified and regular first class mail[,]" TEX. R. CIV. P. 10, Stewart provided no proof of delivery. Nothing in the record indicates how or when the motion was delivered. *Compare Tactical Air Defense Servs. Inc. v. Searock*, 398 S.W.3d 341, 345-347 (Tex. App. – Dallas 2013, no pet.) (reversing post-answer default judgment, noting lack of evidence that client received motion to withdraw).

Stewart did not certify service of the motion on Coastal Motorcars. *C.R. 178* (certificate of service); *compare Tactical Air*, at 345 (certificate of service did not show that motion to withdraw was properly sent). At the hearing on the motion, Stewart said that he "sent copies of the motion" and "visited with [Allen] on the telephone … ." *Supp. R.R. 1:5*. Thus, if Stewart attempted to comply with Rule 10's delivery requirement, he did so using

---

[17] By contrast, Allen testified, by affidavit, that Coastal Motorcars was "not given sufficient time to address the withdrawal or possibly seek other counsel." *C.R. 431*.

the "last known address" that he provided – a post-office box that had been closed for at least three months. *See above*, at 1-2, 4. [18]

In permitting Stewart's withdrawal, the trial court instructed Plaintiffs' counsel to serve the withdrawal order and a mediation order on Coastal Motorcars. *Supp. R.R. 1:6.* Plaintiffs' counsel responded that he would do so. *Supp. R.R. 1:7.* Instead, it appears that Plaintiffs' counsel prepared a motion for summary judgment to disadvantage a then-unrepresented defendant.

When the Postal Service returned the service copy of the motion for summary judgment and notice of hearing, *C.R. 494* (envelope), two weeks before the hearing, *C.R. 436* (tracking record), Plaintiffs could have contacted Stewart for alternative contact information, could have served Coastal Motorcars by serving its registered agent,[19] or sought an order permitting service "by such other manner as the court in its discretion may direct." TEX. R. CIV. P. 21a(a)(2). Plaintiffs instead went forward with a hearing, with their counsel telling the trial court:

---

[18] Plaintiffs argued, to the trial court, that Coastal Motorcars' motion for new trial admitted receipt of the motion to withdraw. *C.R. 475.* Plaintiffs, however, did not identify any particular statement as the admission. No such admission exists.

[19] "The registered agent … is an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity[.]" TEX. BUS. ORG. CODE §5.201(b).

57

> However, I've not heard from them. I sent notice of this motion and of this hearing to the Defendant at the address provided by Mr. Stewart. No response is forthcoming. It's ripe for a summary judgment … .

*R.R. 2:4.* Plaintiffs' counsel did not mention that notice was not received.

The record does not show the presence of notice "reasonably calculated, under the circumstances" to notify Coastal Motorcars of the motion for summary judgment and its setting for hearing. *Peralta*, at 84-85. Nor does the record show that Coastal Motorcars intentionally failed to provide information for service of documents. As discussed above, the record contradicts such an assertion. If these circumstances permit action adverse to Coastal Motorcars, "due process requires some lesser sanction than" a summary judgment "without notice or an opportunity to be heard." *Mathis*, at 746 (setting aside post-answer default judgment because defendant, who did not provide updated address, did not receive notice of trial setting).[20]

---

[20] While Plaintiffs rely on Civil Practice and Remedies Code §30.015 as establishing a duty to provide a current address, *C.R. 475*, that statute's only enforcement provision provides that "the trial court may assess a fine of not more than $50." TEX. CIV. PRAC. & REM. CODE §30.015(e). The statute contains no text that authorizes a default summary judgment or a post-answer default judgment as a penalty for a failure to comply.

The trial court therefore abused its discretion by not setting aside the summary judgment after Coastal Motorcars' made its motion for new trial.[21]

### B. The trial court also abused its discretion by not setting aside the summary judgment for excusable accident or mistake.

Due process requires setting aside the summary judgment because Coastal Motorcars had neither actual nor constructive notice. But even if the Court were to accept Plaintiffs' constructive notice argument, the trial court abused its discretion by not setting aside the summary judgment because of excusable accident or mistake, as requested in Coastal Motorcars' motion for new trial.

#### 1. The Court may have to decide whether to apply the three-part *Craddock* test or the two-part *Carpenter* test.

Coastal Motorcars asserted a right for new trial under the three-factor test in *Craddock v. Sunshine Bus Lines Inc.*, 133 S.W.2d 124, 126 (Tex. 1939); *see also C.R. 424* (mot.). The Texas Supreme Court has described the test as follows:

---

[21] "The trial court's decision on a new trial motion is subject to review for abuse of discretion." *Smith*, 53 S.W.3d at 817. A trial court's discretion is limited to resolving reasonably and properly disputed fact issues, *In re Dillard Dept. Stores Inc.*, 198 S.W.3d 778, 781 (Tex. 2006), and the trial court has "no discretion in determining what the law is or applying the law to the facts." *Id.* at 782 (quot. omitted). Unless the nonmovant requests an evidentiary hearing, a trial court has no discretion to resolve disputed fact issues against a movant for a new trial. *See, e.g., Tactical Air*, at 348-349; *Smith*, at 818. Because that is the situation here, the trial court had no discretion, and its refusal to set aside the summary judgment is effectively subject to de novo review.

(1) the failure to answer was not intentional or the result of conscious indifference, but the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no undue delay or otherwise injure the plaintiff.

*Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685 (Tex. 2002).

Plaintiffs asserted that the correct standard is a different two-part test set forth in *Carpenter*. *C.R. 472.* The Texas Supreme Court held that the two-part test applies when a party moves "for leave to file a late summary-judgment response." *Carpenter*, at 688. That court reserved the question of "whether *Craddock* should apply when a nonmovant discovers its mistake after the summary-judgment hearing or rendition of judgment." *Id.* at 686. The two-part *Carpenter* test requires that: "(1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment." *Id.* at 688.[22]

An examination of *Carpenter* shows that the first and second elements of the *Carpenter* test are the same as the first and third elements of the

---

[22] While purporting to quote *Carpenter*, Plaintiffs misrepresented the standard to the trial court by inserting "(unmixed with any negligence on the part of Defendant)" into the first part of the test. *C.R. 472. Carpenter* imposes no such requirement. In *Wheeler*, the Texas Supreme Court reaffirmed that *Carpenter* requires "intent or conscious indifference." 157 S.W.3d at 442.

*Craddock* test. *Carpenter* described both tests in the same language, only modifying words to account for the summary judgment context. *Compare* 98 S.W.3d at 685 (stating three-element *Craddock* test) *with id.* at 686 (stating two-element *Carpenter* test).

That leaves the question reserved in *Carpenter* of whether the remaining *Craddock* element should apply. Absent both actual and constructive notice, constitutional due process compels disposing of *Craddock*'s second element. *Mathis*, at 744 (citing *Peralta*).

But even assuming constructive notice were given, *Craddock*'s second element should not be applied. In deciding not to apply that element to requests for leave to file late summary judgment responses, the Texas Supreme Court began its explanation with: "First, because our rules do not mandate a summary-judgment response, a party that fails to timely file one has breached no legal duty." *Carpenter*, at 687. The court's second reason was that "the consequences to a party that inadvertently fails to timely respond to a summary-judgment motion are often similar to those faced by a party that would otherwise be bound by erroneous or deemed admissions." *Id.* "Each faces the very real prospect of summary disposition without regard to the underlying merits." *Id.*

Based on these two considerations, the court reasoned that *Carpenter*'s two-part test "fairly balances the parties' interests and furthers the policies our rules are intended to serve." *Id.* at 687-688.

Those same considerations apply at least where a nonmovant has only constructive notice of a summary judgment hearing.[23] A nonmovant with only constructive notice does not have actual knowledge of its need to respond. Such a nonmovant will not know of any need to plead and prove matters that require a response, to conduct additional discovery to obtain supporting evidence, or to move for a continuance to allow additional time for that discovery.[24] A nonmovant with only constructive notice may receive any resulting judgment with little or no time to obtain the summary judgment motion and assemble whatever merits evidence is then available for a motion for new trial.[25] In those circumstances, to apply *Craddock*'s

---

[23] The Court probably can avoid the question of whether *Craddock* should apply where a nonmovant actually receives notice of a summary judgment motion and hearing.

[24] For example, had Coastal Motorcars been aware of the motion and the hearing date, Coastal Motorcars could have deposed Brown, who had not been deposed, in response to Plaintiffs' attempt to have Garcia testify for Brown under a power of attorney. *See above*, at 26 fn. 8. Such a deposition may have raised fact issues on such matters as the extent of Brown's knowledge about the vehicle's use and condition, the extent of pre-sale disclosures, the materiality of and reliance on pre-sale representations, and post-sale changes in the condition of the 528i.

[25] For example, Coastal Motorcars' sworn motion for new trial states that Coastal Motorcars did not receive a copy of Plaintiffs' motion for summary judgment until July 31, 2014, which was the same day that Coastal Motorcars' motion for new trial was due and was filed. *C.R. 421* (showing July 31 filing date), 423 (copy, without exhibits,

62

additional element will also prevent a nonmovant "from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a)(2).

*Carpenter*'s two-element test is therefore the correct one to apply to this case.

### 2. Coastal Motorcars' motion for new trial satisfied both tests.

Regardless of whether *Craddock* or *Carpenter* applies, either test is satisfied.

The first element of both tests requires that "the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake[.]" *Carpenter*, at 685, 688. Coastal Motorcars satisfied this element. Allen's affidavit explained that Coastal Motorcars did not file a response, and that this "was accidental" and "not because of conscious indifference" because Coastal Motorcars did not receive a copy of the motion for summary judgment or notice of hearing. *C.R. 431-433.* Without notice, a party cannot intentionally or with conscious indifference fail to respond. *Smith*, 53 S.W.3d at 818 (notice of trial date not received). To contradict Allen's testimony, Plaintiffs had the burden of requesting an evidentiary hearing. *Id.* (quoted above, at 52 fn. 13). Moreover, nothing in

---

received on July 31 after district clerk was "unable to find the file for several days"); *see also C.R. 416* (showing July 1 judgment date); TEX. R. CIV. P. 329b (requiring the filing of motions for new trial within 30 days of signing of judgment).

the record suggests that Coastal Motorcars intended to avoid service. *See above*, at 54-57.

The second *Carpenter* element and the third *Craddock* element is that setting aside the judgment "will occasion no undue delay or otherwise injure" the party awarded summary judgment. *Carpenter*, at 685, 688.[26] That is, the opponent must not be "unduly prejudiced." *Id.* at 687. A sworn motion that denies undue delay or other injury is sufficient to shift the burden onto an opponent to show that undue delay or other injury would result. *Mathis*, 166 S.W.3d at 744. Coastal Motorcars satisfied that requirement. *C.R. 426* (mot.), *429* (verification). Because Plaintiffs did not request an evidentiary hearing to contest that sworn denial, *Smith*, at 818, the trial court was required to credit it. Moreover, nothing in the record establishes the contrary. *Mathis*, at 744 (similar observation).

Assuming that *Craddock* would apply, its remaining element ("the motion for new trial sets up a meritorious defense") is also satisfied. *Carpenter*, at 285 (quoted). Coastal Motorcars presented evidence that it disclosed the prior accident, that a CarFax report did not indicate structural or frame damage, that any damage was repaired before the vehicle was sold

---

[26] A party need not satisfy these elements if the party "has been denied due process through lack of notice" of a setting. *Smith*, at 817.

64

at auction, and that any damage did not cause the vehicle to be classified as "a total loss, a salvage vehicle or a reconditioned vehicle." *C.R. 425, 433, 445.* Even assuming Plaintiffs' motion for summary judgment were otherwise sufficient, this evidence would set up a defense to: the value of the vehicle and (as a result) the amount of any damages awardable on Plaintiffs' claims, *see above*, at 23-27; the reliance element of a DTPA laundry list (§17.46(b)) claim, *see above*, at 30-31; the "taking advantage" and "grossly unfair degree" elements of a DTPA unconscionability claim, *see above*, at 31-32; the merchantability of the vehicle at the time of sale for the purpose of a DTPA breach of implied warranty claim, *see above*, at 32; the "basis of the bargain" element of a DTPA breach of express warranty claim, *see above*, at 33-34; the producing cause element of any DTPA claim, *see above*, at 34; the breach of duty and proximate cause elements of a negligence claim, *see above*, at 36-38; the material representation, false representation, intent to induce reliance, and reliance elements of a fraud claim, *see above*, at 38-42; the failure to disclose, materiality, deliberate silence, intent to induce reliance, and reliance elements of a fraud-by-nondisclosure claim, *see id.*; the false information, lack of reasonable care, and reliance elements of a negligent misrepresentation claim, *see above*, at 39-42; the gross-disparity-in-value theory that is the basis of Plaintiffs'

stand-alone unconscionability claim, *see above*, at 42; and the excess-value theory that is the basis of multiple other claims. *See above*, at 42, 44-45. Moreover, a trier of fact could consider disclosure of the accident as a factor that would allow an award of less than the maximum in DTPA additional damages or no such damages at all. *See above*, at 28 (discussing discretionary nature of those damages), 49-50 (discussing sufficiency of proof of knowing or intentional violation).

Because the damages in this case are unliquidated, setting up a meritorious defense as to damages – even if only DTPA additional damages – would require a new trial on all issues. TEX. R. CIV. P. 44.1(b); *see also above*, at 17-20. Coastal Motorcars' motion for new trial, however, set up additional reasons why Plaintiffs' motion for summary judgment could not, and should not, have been granted.

Under either the *Craddock* test or the *Carpenter* test, the trial court erred by overruling Coastal Motorcars' motion for new trial.

## CONCLUSION AND PRAYER FOR RELIEF

The trial court erred by granting the summary judgment and again erred by not setting it aside. The errors caused the rendition of an improper judgment and therefore require reversal. TEX. R. CIV. P. 44.1(a).

66

Coastal Motorcars asks that the Court reverse the trial court's judgment and remand the case to the trial court for further proceedings on all issues. Should the Court nonetheless conclude that any part of the trial court's judgment can be sustained, Coastal Motorcars alternatively requests a reversal of the judgment as to all other parts and a remand of those parts for further trial court proceedings.

Coastal Motorcars also asks the Court for any other relief to which it is entitled.

Respectfully submitted,

/s/ Brian Miller
Brian Miller
State Bar No. 24002607

ROYSTON RAYZOR
VICKERY & WILLIAMS L.L.P.
Frost Bank Plaza, Suite 1300
802 N. Carancahua St.
Corpus Christi, TX 78401
Tel. No. (361) 884-8808
Fax No. (361) 884-7261
E-mail: brian.miller@roystonlaw.com

*Attorney for appellant*
*Coastal Motorcars Ltd.*

# CERTIFICATE OF SERVICE

A true copy of this document was served using the electronic filing and service system and as shown below on March 16, 2015.

*Via e-mail to dbarre@albmlaw.com*
Denny Barre
ANDERSON LEHRMAN
BARRE & MARAIST L.L.P.
Gaslight Square, Suite 1
1001 Third St.
Corpus Christi, TX 78404

*Attorney for appellees*

/s/ Brian Miller
Brian Miller

# CERTIFICATE OF WORD-COUNT COMPLIANCE

I certify that this document complies with Rule of Appellate Procedure 9.4. Excluding the portions listed in Rule 9.4(i)(1), and according to the word count of the computer program used, this document contains 14,828 words.

/s/ Brian Miller
Brian Miller

# APPENDIX

# Index to Appendix

| Document | Record Cite | Appendix Page |
|---|---|---|
| | | |
| **Clerk's record excerpts** | | |
| *Motion to Withdraw as Attorney for Defendant* (May 27, 2014) | C.R. 177 | 1 |
| *Order Granting Motion to Withdraw as Attorney for Plaintiff* [sic] (May 28, 2014) | C.R. 181 | 3 |
| *Plaintiffs' Motion for Summary Judgment* (main document only) (June 6, 2014) | C.R. 184 | 4 |
| *Notice of Setting for Hearing on Plaintiffs' Motion for Summary Judgment* (June 6, 2014) | C.R. 407 | 11 |
| *Order Granting Final Summary Judgment Against Defendant* (July 1, 2014) | C.R. 415 | 13 |
| *Motion for New Trial and to Set Aside Judgment* (main document only) (July 31, 2014) | C.R. 421 | 15 |
| Affidavit of Art Allen (exhibit to motion) | C.R. 431 | 25 |
| U.S. Postal Service tracking record (exhibit to motion) | C.R. 431 | 30 |
| *Order* (granting motion for new trial) (Sept. 18, 2014) | C.R. 450 | 31 |
| *Order Withdrawing and Vacating the Order Granting Defendant's Motion for New Trial* (Sept. 25, 2014) | C.R. 459 | 32 |
| Envelope for service of *Plaintiffs' Motion for Summary Judgment* and notice of hearing (exhibit to response) | C.R. 494 | 33 |
| | | |
| **Reporter's Record Excerpts** | | |
| Hearing on motion to withdraw (May 28, 2014) | Supp. R.R. 1:1 | 34 |
| Hearing on motion for summary judgment | R.R. 2:1 | 43 |
| | | |
| **Statutes** | | |
| Excerpts from Texas Business and Commerce Code, Chapter 2 | | 50 |

| | | |
|---|---|---|
| Excerpts from Texas Business and Commerce Code, Chapter 17 | | 53 |
| Excerpts from Texas Business Organizations Code, Chapter 5 | | 63 |
| Excerpts from Texas Civil Practice and Remedies Code, Chapter 30 | | 66 |
| Excerpts from Texas Civil Practice and Remedies Code, Chapter 38 | | 67 |
| TEX. ACTS (75th Leg.), Ch. 887 (1997) | | 68 |

NO. 2013-DCV-0520-F

| | | |
|---|---|---|
| MARY ALICE GARCIA and MARY LOU BROWN | § § § | IN THE DISTRICT COURT |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | 214TH JUDICIAL DISTRICT |
| | § | |
| COASTAL MOTORCARS, LTD. D/B/A | § | |
| BMW OF CORPUS CHRISTI | § | |
| Defendant(s) | § | NUECES COUNTY, TEXAS |

## **MOTION TO WITHDRAW AS ATTORNEY FOR DEFENDANT**

ERIC STEWART asks this Court to allow him to withdraw as attorney for Defendant, COASTAL MOTORCARS, LTD d/b/a BMW OF CORPUS CHRISTI.

1.      This case is currently set for trial on September 15, 2014. There are deadlines set as per the docket control order which is attached hereto as Exhibit "A."

2.      There is good cause, as required by Texas Rule of Civil Procedure 10, for the court to grant this Motion.  Defendant and counsel are at an impasse as to how this case should be handled.  The disagreements are such that continued representation is not practical.

3.      This withdrawal is not sought for the purpose of delay.

4.      A copy of this motion has been delivered to the Defendant and Defendant has been notified in writing of his right to object to this motion.

5.      Defendant's last known address is:

Art Allen
Coastal Motorcars, Ltd, d/b/a/ BMW of Corpus Christi
PO Box 60169
Corpus Christi, Texas 78466

6.      Defendant has not consented at this time.



Appx. 1

177

7.     For these reasons, Eric Stewart and the firm of HUSEMAN & STEWART ask this Court to grant his motion to withdraw as attorney for Defendant, COASTAL MOTORCARS, LTD d/b/a BMW OF CORPUS CHRISTI.

Respectfully submitted,

HUSEMAN & STEWART
615 N. Upper Broadway, Suite 2000
Corpus Christi, TX 78478
Tel:    (361) 883-3563
Fax:    (361) 883-0210

_____
ERIC STEWART
State Bar No. 24058133

## NOTICE OF HEARING

A hearing on Plaintiffs Motion to Withdraw has been set for the 28th day of May 2014, at 1:30 p.m. in 214th District Court, Nueces County Texas.

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2014, that a true and correct copy of the above and foregoing was served in the manner described below to:

**VIA FACSIMILE: 361-883-4079**
Mr. Denny Barre
ANDERSON LEHRMAN BARRE & MARAIST
Gaslight Square
1001 Third Street, Ste. 1
Corpus Christi, Texas 78404

_____
ERIC STEWART

***Appx. 2***
178

NO. 2013-DCV-0520-F

| | | |
|---|---|---|
| MARY ALICE GARCIA and MARY LOU BROWN | § § § | IN THE DISTRICT COURT |
| Plaintiff(s) | § § | |
| VS. | § § | 214TH JUDICIAL DISTRICT |
| COASTAL MOTORCARS, LTD. D/B/A BMW OF CORPUS CHRISTI | § § | |
| Defendant(s) | § | NUECES COUNTY, TEXAS |

## ORDER GRANTING MOTION TO WITHDRAW AS ATTORNEY FOR PLAINTIFF

On ___*May 28th*___, 2014, the Court considered the motion of Eric Stewart and HUSEMAN & STEWART to withdraw as counsel for Defendant.

Said motion is GRANTED.

SIGNED ___*May 28th*___, 2014.

_____
JUDGE PRESIDING

SCANNED

JUL 02 2014

PATSY PEREZ, DISTRICT CLERK
NUECES COUNTY

SCANNED

MAY 29 2014

PATSY PEREZ, DISTRICT CLERK
NUECES COUNTY

*Appx. 3*

CAUSE № 2013-DCV-0520-F

| | | |
|---|---|---|
| MARY ALICE GARCIA | § | IN THE DISTRICT COURT |
| AND MARY LOU BROWN | § | |
| | § | |
| | § | |
| VS. | § | 214TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| COASTAL MOTORCARS, LTD. D/B/A | § | |
| BMW OF CORPUS CHRISTI | § | NUECES COUNTY, TEXAS |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Now COMES Mary Alice Garcia and Mary Lou Brown ("Plaintiffs"), Plaintiffs herein, and files this Motion for Summary Judgment against Coastal Motorcars, Ltd. d/b/a BMW of Corpus Christi ("BMWCC" or "Defendant"), Defendant herein, and in support thereof, Plaintiffs would show the Court as follows:

### CURRENT STATUS OF PLEADINGS

1.  On February 5, 2013 Plaintiffs filed its Original Petition against Defendant.

2.  On February 27, 2013 Defendant filed its Original Answer to Plaintiffs' Original Petition.

3.  On March 27, 2013 Defendant filed its First Amended Answer.

4.  The case is set for trial on September 15, 2014.

5.  On the date stated in the Certificate of Service contained herein, Plaintiffs sent this Motion for Summary Judgment against Defendant for filing.

*Appx. 4*

## Background & Basis for Summary Judgment

Plaintiffs are entitled to Summary Judgment against Defendant as a matter of law for all of the following reasons:

6. On or about October 19, 2011, BMWCC sold Plaintiffs a 2008 BMW 528i, vehicle identification number WBANU53548C117148 ("vehicle").

7. BMWCC sold the vehicle and other goods and services to Plaintiffs for a total of payments of $48,534.48 as reflected on the Motor Vehicle Retail Installment Sales Contract ("contract").

8. The original creditor for the sale of the vehicle was BMWCC.

9. The contract was assigned by BMWCC to Navy Army Community Credit Union, which is the current owner and holder of the contract.

10. Plaintiffs traded in another 2008 BMW 528i that had more miles so that Plaintiffs could have the same automobile but with less miles.

11. Shortly after purchase, Plaintiffs began to experience problems with the vehicle, and on each occasion, Plaintiffs took the vehicle to BMWCC for service.

12. Since purchasing the vehicle October 19, 2011, the vehicle has been in BMWCC's repair facility a number of times.

13. BMWCC represented that the service work would be performed in a good and workmanlike manner and was obligated to repair the vehicle in a good and workmanlike manner; this has not occurred as some of the problems continue to persist.

*Appx. 5*

14. Because of the repeated problems with the vehicle, Plaintiffs requested that BMWCC trade Plaintiffs out of the vehicle and in to another one - one that would be the same make and model with the same options and with similar mileage.

15. BMWCC declined and said that Plaintiffs could purchase another vehicle from BMWCC if Plaintiffs would agree to put down an additional $6,000.00.

16. Plaintiffs declined and went to inquire at other local dealerships.

17. On May 4, 2012 Plaintiffs learned, for the first time, that the vehicle had been involved in a prior wreck, a material fact that BMWCC failed to disclose to Plaintiffs prior to selling the vehicle to Plaintiffs. In fact, the vehicle had sustained extensive damage, including frame/unibody damage.

18. BMWCC had actual knowledge that the vehicle had been in a prior wreck and had frame/unibody damage as it purchased the vehicle at ADESA's auto auction with full knowledge of such damage for $24,500.00, which BMWCC failed to disclose to Plaintiffs.

19. Had either the nature or extent of the prior damage been disclosed to Plaintiffs prior to purchase, Plaintiffs would not have purchased the vehicle under the terms and conditions purchased. Plaintiffs were induced to purchase the vehicle as a result of BMWCC's failure to disclose.

20. As a result of Defendant's conduct described herein, Plaintiffs have suffered damages in excess of the minimal jurisdictional limits, for which Plaintiffs have sued.

*Appx. 6*

21. Exhibit "1"    Affidavit of Mary Alice Garcia

22. Exhibit "2"    Affidavit of Denny Barre

23. Exhibit "3"    Documents labelled BMW 00001-00020 produced in response to Plaintiffs' written discovery to Defendant

24. Exhibits 1-3, along with any attachments, are made a part of this pleading for all purposes, are filed in support hereof, and are incorporated herein by reference as if fully copied and set forth at length.

25. Plaintiffs also request that the Court refer to and take judicial notice of the Court's file in this lawsuit.

26. Some of the documents attached to this Motion were produced in the course of discovery in this lawsuit and are a part of the record in this cause of action, in the form of deposition testimony and deposition exhibits and/or were produced by the parties in response to written discovery. Pursuant to TEX. R. CIV. P. 193.7 and/or other Texas law, the documents are hereby authenticated for all purposes herein. Notice pursuant to TEX. R. CIV. P. 193.7 was provided to Defendant and was contained in the written discovery requests.

27. Plaintiffs also request that the Court refer to the items contained in TEX. R. CIV. P. 166a(c)(i) & (ii) when ruling on this Motion, including but not limited to the following:

27.1. Affidavit of Mary Alice Garcia

27.2. Affidavit of Denny Barre

27.3. Portions of Defendant's 1st Amended Responses to Plaintiffs' Interrogatories

27.4. Portions of the deposition of ADESA Texas, Inc. d/b/a ADESA Dallas

27.5. Portions of documents produced by Defendant in response to Plaintiffs' Requests for Production labelled BMW 00001-00020

28. In accordance with TEX. R. CIV. P. 166a(d), Plaintiffs give their notice of intent to use the Exhibits and any attachments in support of this Motion for Summary Judgment against Defendant.

## RELIEF REQUESTED

The pleadings of the parties filed herein together with the attached Exhibits show that there is no genuine issue as to any material fact in this Cause with regard to Plaintiffs' causes of action against Defendant for violations of the DTPA, breach of contract, fraud, unconscionability, conversion, negligence, negligent misrepresentation, gross negligence, common law fraud and fraud by non-disclosure, quantum meruit, quasi contract, assumpsit, detrimental reliance, promissory estoppel, unjust enrichment, and money had and received as described above. Therefore, Plaintiffs are entitled to judgment against Defendant as a matter of law on each of these causes of action.

Plaintiffs request that in the event that the complete relief requested by them is denied that the Court determine those material facts that are in good faith actually controverted and make an Order specifying those facts that appear to be without substantial controversy. In addition, Plaintiffs request that in the event the complete relief requested by it is denied, the Court grant Partial Summary Judgment against

*Appx. 8*

Defendant for Plaintiffs as to such allegations and relief as the Court may approve and Order.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Court set a time for hearing this Motion, and that upon said hearing, the Court in all things grant Plaintiffs' Motion for Summary Judgment against Defendant, that Plaintiffs be granted all relief requested in its Original Petition and Motion for Summary Judgment against Defendant on file herein, and that Plaintiffs have such other and further relief at law or in equity, both general and special, to which they may show themselves to be justly entitled.

Respectfully submitted,

**ANDERSON, LEHRMAN, BARRE & MARAIST, L.L.P.**
Gaslight Square
1001 Third Street, Suite Nº 1
Corpus Christi, Texas 78404
(361) 884-4981 Telephone
(361) 883-4079 Telecopier
e-mail: "*dbarre@albmlaw.com*"

By: _____

Denny Barre
State Bar No. 01805280

Attorneys for Plaintiffs

*Appx. 9*
189

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to the Texas Rules of Civil Procedure, a true and correct copy of the foregoing has been served on the following:

Mr. Art Allen, Registered Agent          CMRRR № 7011 1150 0000 8829 0993
COASTAL AUTO ENTERPRISES, INC.
as Registered Agent for
COASTAL MOTORCARS, LTD.
D/B/A BMW OF CORPUS CHRISTI
Post Office Box 60169
Corpus Christi, Texas 78466

on this the 6th day of June, 2014.

_____
Denny Barre

w:\\garcia\msj

CAUSE № 2013-DCV-0520-F

| | | |
|---|---|---|
| MARY ALICE GARCIA | § | IN THE DISTRICT COURT |
| AND MARY LOU BROWN | § | |
| | § | |
| | § | |
| VS. | § | 214TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| COASTAL MOTORCARS, LTD. D/B/A | § | |
| BMW OF CORPUS CHRISTI | § | NUECES COUNTY, TEXAS |

## NOTICE OF SETTING FOR HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Please take notice that Plaintiffs' Motion for Summary Judgment has been set for hearing before the 214th District Court of Nueces County, Texas, at the Nueces County Courthouse, Corpus Christi, Texas on the 1st day of July, 2014 at 1:30 p.m.

Respectfully submitted,

ANDERSON, LEHRMAN, BARRE &
  MARAIST, L.L.P.
Gaslight Square
1001 Third Street, Suite № 1
Corpus Christi, Texas 78404
(361) 884-4981 Telephone
(361) 883-4079 Telecopier
e-mail: "dbarre@albmlaw.com"

By: _____
Denny Barre
State Bar No. 01805280

Attorneys for Plaintiffs

FILED-PATSY PEREZ
CLERK OF COUNTY &
DISTRICT COURTS
NUECES COUNTY, TEXAS
2014 JUN -6 A 0:0
BY

App. 21

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to the Texas Rules of Civil Procedure, a true and correct copy of the foregoing has been served on the following:

Mr. Art Allen, Registered Agent
COASTAL AUTO ENTERPRISES, INC.
as Registered Agent for
COASTAL MOTORCARS, LTD.
D/B/A BMW OF CORPUS CHRISTI
Post Office Box 60169
Corpus Christi, Texas 78466

CMRRR № 7011 1150 0000 8829 0993

on this the 6th day of June, 2014.

Denny Barre

w:\\garcia\notice.msj

*Appx. 12*

408

CAUSE № 2013-DCV-0520-F

| | | |
|---|---|---|
| MARY ALICE GARCIA | § | IN THE DISTRICT COURT |
| AND MARY LOU BROWN | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | 214TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| COASTAL MOTORCARS, LTD. D/B/A | § | |
| BMW OF CORPUS CHRISTI | § | NUECES COUNTY, TEXAS |

## ORDER GRANTING FINAL SUMMARY JUDGMENT AGAINST DEFENDANT

On this day the Court considered Plaintiffs' Motion for Summary Judgment against Coastal Motorcars, Ltd. d/b/a BMW of Corpus Christi, Defendant, and after considering the Motion, any response filed to the Motion, the evidence, and the law finds that the Motion should be granted. The Court also takes judicial notice of the Court's file contents and finds that Defendant was properly served with Plaintiff's Motion for Summary Judgment and notice of this hearing. The Court also finds that Plaintiff is entitled to the monetary damages set forth below and the reasonable and necessary attorney's fees set forth below, which fees are authorized by TEX. BUS. & COM. CODE § 17.50(d) and TEX. CIV. PRAC. & REM. CODE ANN. § 38.001.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that Mary Alice Garcia and Mary Lou Brown have judgment against Coastal Motorcars, Ltd. d/b/a BMW of Corpus Christi as follows:

1.    The sum of $22,707.43 as economic damages;

2.    The sum of $68,122.29 as additional damages;

3.    Prejudgment interest on $22,707.43 at 5.00% per annum pursuant to TEX. FINC. CODE §304.104 from February 5, 2013 through the date this judgment is signed; the amount of prejudgment interest from February 5, 2013 through July 1, 2014 is $1,589.21, and interest continues to accrue at the rate of $3.11 *per diem* from July 2, 2014 until the date the Judgment is signed;

**Appx. 13**

4.    The sum of $137,762.94 as attorney's fees; and, if this cause is not appealed, the judgment for attorney's fees will be credited with $65,000.00, leaving $72,762.94; and, if this cause is appealed to the court of appeals, but the appeal is not carried to the Supreme Court of Texas by appeal or writ of error, the judgment for attorney's fees will be credited with $35,000.00, leaving a recovery of attorney's fees of $102,762.94; and if application for writ of error is made but such application is denied, dismissed or refused, the judgment for attorney's fees will be credited with $30,000.00, leaving a recovery of attorney's fees of $107,762.94;

5.    Postjudgment interest at the rate of 5.00% per annum, from one day after this judgment is signed and until the judgment is paid in full pursuant to Chapter 304 of the Texas Finance Code and/or other Texas law;

6.    All costs of Court are taxed against Coastal Motorcars, Ltd. d/b/a BMW of Corpus Christi;

7.    All writs and processes for the enforcement and collection of this judgment may issue as necessary; and

8.    This Judgment is final, disposes of all claims and all parties, and is appealable.

SIGNED, RENDERED, AND ORDERED ENTERED this 1st day of July, 2014.

_____
JUDGE PRESIDING

w:\\garcia\msj.ord

CAUSE NO. 2013-DCV-0520-F

| | | |
|---|---|---|
| **MARY LOU BROWN and** | § | **IN THE DISTRICT COURT** |
| **MARY ALICE GARCIA,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **VS.** | § | **214TH DISTRICT COURT** |
| | § | |
| **COASTAL MOTORCARS, LTD. D/B/A** | § | |
| **BMW of CORPUS CHRISTI** | § | |
| *Defendants* | § | **NUECES COUNTY, TEXAS** |

### MOTION FOR NEW TRIAL AND TO SET ASIDE JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, COASTAL MOTORCARS, LTD. D/B/A BMW of CORPUS CHRISTI, Defendant in the above styled and numbered cause, and respectfully requests that the Honorable Court to grant a new trial in the interest of justice and fairness and/or on the grounds stated below or set aside the judgment granted on Plaintiffs' Mary Lou Brown's and Mary Alice Garcia's Motion for Summary Judgment on July 1, 2014, and in support thereof states and assert as follows:

**I.**

*Introduction/ Craddock Factors Do Not Apply Because Defendant Was Not Properly Served.*

Plaintiffs sued Defendant on or about February 5, 2013 regarding the sale of a vehicle by Defendant to Plaintiffs. The suit was based upon the sale of a vehicle by Defendant to Plaintiffs in 2011. At that time, the Defendant owned and operated the BMW Dealership in Corpus Christi, Texas and was doing business as BMW of Corpus Christi.

In December of 2012, Defendant sold its interest in the auto dealership known as "BMW of Corpus Christi" and no longer owned or operated said business establishment.

Plaintiffs served Defendant with the original lawsuit in February, 2013 by serving its

*Appx. 15*

421

Registered Agent, Coastal Auto Enterprises, Inc., the Registered Agent for Defendant as per the records on file with the Texas Secretary of State. Mr. Art Allen was served as he was the Registered Agent for Coastal Auto Enterprises. Mr. Allen was served at 4225 South Staples Street, Corpus Christi, Texas 78415; this was the address listed with the Texas Secretary of State. On February 27, 2013, Mr. Eric Stewart filed an answer on behalf of Defendant. On or about May 27, 2014, Mr. Stewart filed a Motion to Withdraw as Attorney of Record for Defendant and this Court granted that Motion the next day on May 28, 2014. That Motion listed the last known address of the Defendant as follows:

> "Art Allen
> Coastal Motor Cars, Ltd, d/b/a BMW of Corpus Christi
> P.O. Box 60169
> Corpus Christi, Texas 78466"

Plaintiffs had actual and constructive knowledge that Art Allen was not the Defendant and not the agent for service of Coastal Motor Cars, Ltd. Further, Plaintiffs had actual and constructive knowledge that Coastal Motor Cars, Ltd, was not doing business as BMW of Corpus Christi, since it had been sold in December of 2012. *See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

Further, Plaintiffs had constructive knowledge of the new address for Coastal Motor Cars, Ltd., its agent for service of process, Coastal Auto Enterprises, Inc. and its agent for service of process Mr. Art Allen. On or about March 2013, Coastal Motor Cars, Ltd., and Coastal Enterprises Inc. caused to be filed with the Texas Secretary of State its new addresses and addresses of their registered agents, *which were not P.O. Box 60169 Corpus Christi, Texas 78466. See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

In addition, Coastal Motor Cars, Ltd and Coastal Auto Enterprises, Inc, subsequent to the sale of the BMW dealership in Corpus Christi, Texas in December 2012, cancelled said *P.O. Box 60169, Corpus Christi, Texas 78466,* confirming that there was no more mail arriving regarding the business or the new owners and after confirming that the new owner did not want the P.O. Box. This was accomplished in January 2014, some six (6) months prior to Plaintiffs attempted service of their Motion for Summary Judgment. *In fact, counsel for Plaintiffs was fully aware that this was not Defendant's address for service as reflected by the fact that the United States Postal Service, as stated on its website, presumably delivered the unclaimed envelope back to counsel for Plaintiffs on June 17, 2014 at 9:52 a.m., noting that whomever owned the post office box had moved and left no forwarding address; nevertheless and despite such knowledge that the address was not a good address for service or any type of mailing, there is absolutely no indication that Plaintiffs or their counsel checked with the Texas Secretary of State (i.e., the public records maintained by the State in regard to entities in Texas) as to the correct address for service and as is the proper method and procedure for locating the address of an entities Registered Agent in Texas. It is asserted that the correct address was at all times available to Plaintiffs and their counsel if they had just taken a look.* See the *Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

Neither Coastal Motor Cars, Ltd, Coastal Auto Enterprises, Inc., Mr. Art Allen nor any of their agents or representatives were ever served nor did they jointly and/or severally otherwise receive a copy of the Motion for Summary Judgment or notice of any hearing date. (Until the District Clerk of Nueces County, unable to find the file for several days, furnished the Motion without Exhibits only to Defendant's undersigned attorney on July 31, 2014). *See the Affidavit of*

*Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

### *Plaintiffs' Filing of Motion Was Calculated to Give Unfair Advantage*

On June 6, 2014, just nine (9) days subsequent to the Defendant's original attorney withdrawing from the matter, and Plaintiffs knowing that no new attorney had made an appearance on behalf of Defendant, filed their Motion for Summary Judgment. Further, Plaintiffs evidently made no effort to consult with the Secretary of State regarding the Limited Partnership's new address. Lastly, Plaintiffs could not have received notification that the Motion and hearing date were served as the P.O. Box at that time was no longer rented to or under the control of Defendant. *See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

### *Failure to Obtain Service Changes the Factors that Must Be Proved for Granting of a New Trial*

The Courts abhor default judgments. Moreover, when a Defendant has been properly served, in *Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d 124, 126 (Tex. 1939)*, reversed the denial of a post answer default judgment. The "Craddock" requirements have repeatedly been held to apply to post-answer default judgments. *Ivy v. Carrell, 407 S.W.2d 212, 214-15 (Tex.)*

The factors established in *Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d 124, 126 (Tex. 1939)*, as follows:

    a.    Demonstrate the failure to appear was not intentional or the result of conscious indifference, but was a mistake or accident;

    b.    Set up (not necessarily prove) a meritorious defense; and

    c.    Allege that the granting of a new trial will not result in a delay or prejudice to plaintiff.

Defendant's representative's affidavit establishes that the Defendant was never served with the Motion for Summary Judgment or the hearing date.

Proof of lack of notice satisfies the first prong of the Craddock test because without notice, a party cannot intentionally or with conscious indifference fail to appear. *Texas Sting, Ltd. v. R.B. Foods, Inc., 82 S.W.3d 644, 651-52 (Tex. App. – San Antonio 2002, pet, denied).*

Furthermore, having established that the failure to appear was due to a lack of notice, **Defendant is not required to establish the remaining "Craddock" factors to be entitled to a new trial. *Mathis v. Lockwood, 166 S.W.3d 743, 744 (Tex. 2005); Lopez v. Lopez, 757 S.W.2d 721, 722 (Tex. 1988).***

### *Despite Any Craddock Factors Except Notice Having To Be Satisfied, Defendant Can Prove the Remaining*

Nevertheless and to the extent necessary, Defendant also asserts that it has a meritorious defense to the Plaintiffs' claims. When Plaintiffs purchased the vehicle in question, the fact that the rear bumper had been repaired was specifically disclosed, and Defendant also provided the Plaintiffs with a Car Fax report that revealed the vehicle had been in an accident in 2009 and that it had no frame damage. *See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

Plaintiffs' complaints are that the vehicle suffered "unibody damage". The damage to the vehicle was evidently repaired prior to the vehicle being offered for sale at auction and being purchased by Defendant. Further, the damage to the vehicle did not cause it to be classified as a "total loss", a salvage vehicle or a "reconditioned vehicle". Further, there was no "knowing" violation as the fact that the vehicle was in an accident was revealed. *See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

**Appx. 19**
425

Finally, Defendant asserts that the granting of a new trial on the Motion for Summary Judgment will not result in a delay or prejudice to Plaintiffs as no witnesses or other valuable evidence has been lost or will be lost by the granting of a new trial and the matter had, prior to the granting of the Motion for Summary Judgment, been set for trial on the merits. *In support of this request for a new trial, please see the Affidavit of Art Allen, fully incorporated herein by referenced as if set forth at length.*

## II.

### *Denial of Due Process.*

Defendant incorporates the facts and assertions contained in section I above, and thereby further respectfully asserts that Defendant was denied due process by not being provided with notice of Plaintiff's Motion and/or notice of the hearing thereon that resulted in the granting of Plaintiffs' Motion for Summary for Summary Judgment and an entry of Judgment against Defendant, and upon such basis Defendant respectfully requests that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety. *See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

## III.

### *Evidence Factually Insufficient*

Defendant incorporates the facts and assertions contained in section I above, and hereby further respectfully asserts that the evidence presented was factually insufficient to support the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant in this cause and is against the great weight and preponderance of the evidence presented, and upon such basis Defendant respectfully requests that the Order

granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety. *See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

### IV.

#### *Evidence Factually Insufficient*

Defendant incorporates the facts and assertions contained in section I above, and hereby further respectfully asserts that the evidence presented was legally insufficient to support the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant in this cause, and upon such basis Defendant respectfully requests that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety. *See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

### V.

#### *Fairness and Justice*

Defendant incorporates the facts and assertions contained in section I above, and by way of further pleading hereby makes a general request for the setting aside of the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant in this cause, and upon such basis Defendant respectfully requests that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety. *See the Affidavit of Arthur Ray Allen, attached hereto and fully incorporated herein by referenced as if set forth at length.*

#### Prayer

**WHEREFORE, PREMISES CONSIDERED,** Defendant respectfully prays (a) that this

Motion be granted in its entirety, and that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety and that Defendant be granted a new trial/hearing on all matters and issues; and (b) that Defendant be granted such relief, at law and/or in equity, special and/or general, to which Defendant may be justly entitled.

Respectfully submitted,

**HUERTA GUERRA BEAM PLLC**
924 Leopard St.
Corpus Christi, Texas 78401
(361) 236-5050
(210) 800-5050 Fax

By: _____
Patrick L. Beam
State Bar No. 01955560 – Fed. Ad. No. 7939
**ATTORNEY FOR PLAINTIFF**

STATE OF TEXAS §
§
COUNTY OF Harris §

## VERIFICATION OF MOTION FOR NEW TRIAL OF COASTAL MOTOR CARS, LTD. D/B/A BMW OF CORPUS CHRISTI BY ART ALLEN REPRESENTATIVE OF DEFENDANT

Before Me, the undersigned authority on this the 31st day of July, 2014 personally appeared Art Allen, President of Coastal Auto Enterprises, Inc., General Partner of Defendant Coastal Motor Cars, Ltd., known to me and/or identified by valid Government issued photo identification and swore and affirmed that each and every statement and allegation stated in Defendant's Motion for New Trial in Cause No. 2013-DCV-0520-F, *Mary Alice Garcia and Mary Lou Brown vs. Coastal Motor Cars, Ltd. d/b/a BMW of Corpus Christi, 214th District Court of Nueces County*, were within his personal knowledge and that they were true and correct.

Signed and Notarized this 31st day of July, 2014



_____
Art Allen, President
Coastal Auto Enterprises, Inc., as
General Partner of Defendant
Coastal Motor Cars, Ltd.

_____
Notary Public — State of Texas
Printed Name and Seal

MICHAEL EARL WILLIAMS
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 5/17/2017

*Appx. 23*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon all counsel of record pursuant to the Texas Rules of Civil Procedure by the method indicated below on this 31st day of July, 2014.

Mr. Denny Barre
Anderson, Lehrman, Barre & Maraist, LLP
1001 Third Street, Suite 1
Corpus Christi, Texas 78404
~~Via Fax: 361.884.4050~~

Via CMRRR:
7010 0290 0001 5083 2732

Patrick L. Beam

| | | |
|---|---|---|
| MARY LOU BROWN and | § | IN THE DISTRICT COURT |
| MARY ALICE GARCIA, | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | 214TH DISTRICT COURT |
| | § | |
| COASTAL MOTORCARS, LTD. D/B/A | § | |
| BMW of CORPUS CHRISTI | § | |
| *Defendants* | § | NUECES COUNTY, TEXAS |

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

## AFFIDAVIT OF ARTHUR RAY ALLEN

BEFORE ME, the undersigned authority, personally appeared on the date stated below, Arthur Ray Allen a.k.a. "Art Allen", personally known to me and/or identified by valid government issued identification and swore and/or affirmed that he had personal knowledge of the following facts and that they were true and correct:

"My name is Arthur Ray Allen (also known as 'Art Allen'), I am over the age of eighteen (18), of sound mind and otherwise competent to make this affidavit. I am the President, Secretary and a Director of Coastal Auto Enterprises, Inc., the General Partner of Coastal Motor Cars, Ltd., the '*Defendant*' in Cause No. 2013DCV-0520-F, styled *Mary Lou Brown and Mary Alice Garcia v. Coastal Motor Cars, Ltd.*, in the 214th District Court of Nueces County, Texas. Mary Lou Brown and Mary Alice Garcia being referred to hereinafter as '*Plaintiffs*.' I am the agent for service of process for Coastal Auto Enterprises, Inc., who is and at all pertinent times was the agent for service for Coastal Motor Cars, Ltd.

Defendant was formerly represented by Mr. Eric Stewart. In May of 2014, Mr. Stewart's assistant and I were making arrangements for my deposition. With no true reason, Mr. Stewart stated he was going to withdraw; Defendant did not consent to the withdrawal and asserts that it was not given sufficient time to address the withdrawal or possibly seek other counsel. On or about July 15, 2014 I was informed that a Judgment was taken against the Defendant when I received an e-mail from Denny Barre, counsel for Plaintiffs. Although he purportedly had my e-mail address and used it for providing notice of the alleged Judgment, Mr. Barre never sent me a copy of the Motion for Summary Judgment or Notice of any hearing via this same e-mail that he used for notice of the Judgment. Neither I nor the Defendant had a chance to file a response or answer to the Motion for Summary Judgment, and I understand that service was sent to the Defendant at a Post Office Box in Corpus Christi that was cancelled in February of 2014.

*Appx. 25*

My permanent address and address on my Texas driver's licenses has continuously been 715 Upper Broadway Unit 1401, Corpus Christi, Texas. I was not served personally or at this address and had I been I would have had the Defendant file a response or would have immediately hired an attorney to do so.

Plaintiffs had actual and constructive knowledge that Art Allen was not the Defendant and not the agent for service of Coastal Motor Cars, Ltd. Further, Plaintiffs had actual and constructive knowledge that Coastal Motor Cars, Ltd, was not doing business as BMW of Corpus Christi, since it had been sold in December of 2012.

Further, Plaintiffs had constructive knowledge of the new address for Coastal Motor Cars, Ltd., its agent for service of process, Coastal Auto Enterprises, Inc. and its agent for service of process Mr. Art Allen based on it being of record with the Texas Secretary of State. In fact, on or about March 2013, Coastal Motor Cars, Ltd., and Coastal Enterprises Inc. caused to be filed with the Texas Secretary of State its new addresses and addresses of their registered agents, *which were not P.O. Box 60169 Corpus Christi, Texas 78466.*

In addition, Coastal Motor Cars, Ltd and Coastal Auto Enterprises, Inc, subsequent to the sale of the BMW dealership in Corpus Christi, Texas in December 2012, cancelled said *P.O. Box 60169, Corpus Christi, Texas 78466,* confirming that there was no more mail arriving regarding the business or the new owners and after confirming that the new owner did not want the P.O. Box. This was accomplished in January 2014, some six (6) months prior to Plaintiffs attempted service of their Motion for Summary Judgment. In fact, it is asserted that counsel for Plaintiffs was fully aware that this was not Defendant's address for service as reflected by the fact that the United States Postal Service, as stated on its website, presumably delivered the unclaimed envelope back to counsel for Plaintiffs on June 17, 2014 at 9:52 a.m., noting that whomever owned the post office box had moved and left no forwarding address; nevertheless and despite such knowledge that the address was not a good address for service or any type of mailing, there is absolutely no indication that Plaintiffs or their counsel checked with the Texas Secretary of State (i.e., the public records maintained by the State in regard to entities in Texas) as to the correct address for service and as is the proper method and procedure for locating the address of an entity's Registered Agent in Texas. It is asserted that the correct address was at all times available to Plaintiffs and their counsel, if they had just bothered to take a look.

Neither Coastal Motor Cars, Ltd, Coastal Auto Enterprises, Inc., Mr. Art Allen nor any of their agents or representatives were ever served nor did they jointly and/or severally otherwise receive a copy of the Motion for Summary Judgment or notice of any hearing date.

The Defendant's failure to answer or file a response to the Motion for Summary Judgment was accidental because I, as Registered Agent, was not served personally or at a current address and I did not have knowledge of the Motion for Summary Judgment or the

hearing thereon, and the failure to answer or file a response was not because of conscious indifference on my part or the part of Defendant.

Defendant also asserts that it has a meritorious defense to the Plaintiffs' claims. When Plaintiffs purchased the vehicle in question, the fact that the rear bumper had been repaired was specifically disclosed to Plaintiffs, and Defendant also provided the Plaintiffs with a Car Fax report that revealed the vehicle had been in an accident in 2009 and that it had no frame damage (as reported by Car Fax).

Plaintiffs' complaints are that the vehicle suffered "unibody damage". The damage to the vehicle was repaired prior to the vehicle being offered for sale at auction and being purchased by Defendant. Further, the damage to the vehicle did not cause it to be classified as a "total loss", a salvage vehicle or a "reconditioned vehicle". Further, there was no "knowing" violation as the fact that the vehicle was in an accident was revealed. Had Plaintiffs inquired as to the exact type of damage, Defendant could have researched the information in their files and would have provided same to Plaintiffs.

Finally, Defendant asserts that the granting of a new trial on the Motion for Summary Judgment will not result in a delay or prejudice to Plaintiffs as no witnesses or other valuable evidence has been lost or will be lost by the granting of a new trial and the matter had, prior to the granting of the Motion for Summary Judgment, been set for trial on the merits."

Defendant further respectfully asserts that Defendant was denied due process by not being provided with notice of Plaintiff's Motion and/or notice of the hearing thereon that resulted in the granting of Plaintiffs' Motion for Summary for Summary Judgment and an entry of Judgment against Defendant, and upon such basis Defendant respectfully requests that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety.

Defendant further asserts that Defendant was denied due process by not being provided with notice of Plaintiff's Motion and/or notice of the hearing thereon that resulted in the granting of Plaintiffs' Motion for Summary for Summary Judgment and an entry of Judgment against Defendant, and upon such basis Defendant respectfully requests that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety.

Defendant further respectfully asserts that the evidence presented was factually insufficient to support the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant in this cause and is against the great weight and preponderance of the evidence presented, and upon such basis Defendant respectfully

requests that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety.

Defendant further respectfully asserts that the evidence presented was legally insufficient to support the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant in this cause, and upon such basis Defendant respectfully requests that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety.

Defendant further makes a general request for the setting aside of the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant in this cause, and upon such basis Defendant respectfully requests that the Order granting of Plaintiffs' Motion for Summary for Summary Judgment and the entry of Judgment against Defendant be set aside in its entirety.

The documents attached hereto as "Exhibit A" (and fully incorporated herein by reference as if set forth at length) being USPS.com USPS Tracking dated 7/31/2014 [*2 pages*] is a true and copy of the tracking detail relating to the mailing sent by Plaintiffs (and/or Plaintiffs' counsel) in regard to the Motion for Summary Judgment and the hearing thereon and is a true and correct copy of what appears on the Official Website for the United States Postal Service, being usps.com.

The documents attached hereto as "Exhibit B" (and fully incorporated herein by reference as if set forth at length) being the Statement of Change of Registered Office/Agent for Coastal Motorcars, Ltd dated March 25, 2013 [*1 page*], Statement of Change of Registered Office/Agent for Coastal; Auto Enterprises, Inc. dated March 25, 2013 [*1 page*], Change of Registered Agent/Registered Office filed April 7, 2003 [*2 pages*], Statement of Change of Registered Office of Coastal Motorcars, Ltd. filed February 4, 2005 [*1 page*] are true and correct copies of documents relating to the entities referenced therein on file with the Texas Secretary of State and as are viewed on the Official website for the Texas Secretary of State and as were caused to be filed with the Texas Secretary of State by the entities named therein.

The documents attached hereto as "Exhibit C" (and fully incorporated herein by reference as if set forth at length) being an Acknowledgement of Disclosure by Dealer "BMW000020 [*1 page*], and CARFAX Vehicle History Report dated 5/3/2011 "BMW000021 – BMW000024" [*4 pages*] are documents produced in the course and scope of discovery in the lawsuit and are a part of the record in this cause of action, in the form of deposition testimony and/or deposition exhibits and/or were produced by the parties in response to written discovery, and it is asserted that they are further authenticated for all purposes by Texas law."

Further, Affiant sayeth not."

*Appx. 28*

"Exhibit 1"

434

Signed and Notarized this 31st day of July, 2014

_____
Art Allen, President for
Coastal Auto Enterprises, Inc.,
General Partner of Defendant
Coastal Motor Cars, Ltd.

_____
Notary Public – State of Texas
Printed Name and Seal



MICHAEL EARL WILLIAMS
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 5/1/2017





Search USPS.com or Track Packages    Subr

Quick Tools                 Ship a Package          Send Mail          Manage Your Mail          Shop          Business Solutions

## USPS Tracking™



**Customer Service ›**
Have questions? We're here to help.

Tracking Number: 70111150000088290993

## Product & Tracking Information

| Postal Product: | Features: |
|---|---|
| | Certified Mail™ |

| | | |
|---|---|---|
| June 17, 2014 , 9:52 am | Delivered | CORPUS CHRISTI, TX 78404 |

Your item was delivered at 9:52 am on June 17, 2014 in CORPUS CHRISTI, TX 78404.

| June 16, 2014 , 9:54 pm | Departed USPS Facility | CORPUS CHRISTI, TX 78469 |
| June 16, 2014 , 12:10 pm | Moved, Left no Address | CORPUS CHRISTI, TX 78466 |
| June 10, 2014 , 9:12 am | Available for Pickup | CORPUS CHRISTI, TX 78466 |
| June 7, 2014 , 9:32 am | Available for Pickup | CORPUS CHRISTI, TX 78466 |
| June 7, 2014 , 9:32 am | Available for Pickup | CORPUS CHRISTI, TX 78466 |
| June 7, 2014 , 9:11 am | Out for Delivery | CORPUS CHRISTI, TX 78411 |
| June 7, 2014 , 9:01 am | Sorting Complete | CORPUS CHRISTI, TX 78411 |
| June 7, 2014 , 6:26 am | Arrived at Unit | CORPUS CHRISTI, TX 78411 |
| June 6, 2014 , 9:22 pm | Arrived at USPS Facility | CORPUS CHRISTI, TX 78469 |

## Available Actions

## Track Another Package

What's your tracking (or receipt) number?

_____

Track It

"Exhibit A"                                                              ***Appx. 30***

Filed
7/31/2014 7:16:37 PM
Patsy Perez
District Clerk
Nueces County, Texas

## CAUSE NO. 2013-DCV-0520-F

| | | |
|---|---|---|
| **MARY LOU BROWN and** | § | **IN THE DISTRICT COURT** |
| **MARY ALICE GARCIA,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **VS.** | § | **214TH DISTRICT COURT** |
| | § | |
| **COASTAL MOTORCARS, LTD. D/B/A** | § | |
| **BMW of CORPUS CHRISTI** | § | |
| *Defendants* | § | **NUECES COUNTY, TEXAS** |

### O R D E R

On the __18__ day of _September_ 2014, came on to be heard and considered Defendant's Motion For New Trial in the above styled and numbered cause, and this Court hereby **ORDERS** that said Motion be **GRANTED**, that the order Granting Plaintiffs' Motion for Summary Judgment and all relief granted therein, be set aside and held for naught. Further that upon notice of at least 21 days to Defendant's new counsel of record, another hearing on Plaintiffs' Motion for Summary Judgment may be held.

**JUDGE PRESIDING**

# SCANNED

SEP 2 5 2014

PATSY PEREZ, DISTRICT CLERK
NUECES COUNTY

*Appx. 31*

450

CAUSE № 2013-DCV-0520-F

| | | |
|---|---|---|
| MARY ALICE GARCIA<br>AND MARY LOU BROWN | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§<br>§<br>§ | 214ᵀᴴ JUDICIAL DISTRICT |
| COASTAL MOTORCARS, LTD. D/B/A<br>BMW OF CORPUS CHRISTI | §<br>§ | NUECES COUNTY, TEXAS |

ORDER WITHDRAWING AND VACATING THE ORDER
GRANTING DEFENDANT'S MOTION FOR NEW TRIAL

On this date the Court considered Plaintiffs' Motion to Withdraw and Vacate the Order Granting Defendant's Motion for New Trial filed in this cause. The Court, after examining its file along with the motion and any response as well as considering any evidence and the argument of counsel, is of the opinion and finds that Plaintiffs' Motion is well taken, that Plaintiffs were not provided notice of any hearing that was set for 8:30 a.m. on September 18, 2014, that Defendant's Motion for New Trial was overruled by operation of law on September 15, 2014, and that good causes exists to withdraw and vacate the Order Granting Defendant's Motion for New Trial that was entered on September 18, 2014.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Order Granting Defendant's Motion for New Trial that was entered on September 18, 2014 is withdrawn and vacated.

SIGNED, ORDERED, AND ENTERED this 25ᵗʰ day of September, 2014.

_____
JUDGE PRESIDING

w:\\garcia\vacate.ord

**SCANNED**

SEP 2 5 2014
PATSY PEREZ, DISTRICT CLERK
NUECES COUNTY

Appx. 32
459

UNITED WE STAND

CERTIFIED MAIL

7011 1150 0000 8829 0993

ANDERSON, LEHRMAN, BARRE & MARAIST, L.L.P.

ATTORNEYS AT LAW
GASLIGHT SQUARE
1001 THIRD STREET, SUITE 1
CORPUS CHRISTI, TEXAS 78404

Mr. Art Allen, Registered Agent
COASTAL AUTO ENTERPRISES, INC.
as Registered Agent for
COASTAL MOTOR CARS, LTD.
D/B/A BMW OF CORPUS CHRISTI
Post Office Box 60169
Corpus Christi, Texas 78466

RECEIVED

DENNY

PU's INST ad ldus of 1bs

Appx. 33
494

**APPELLATE CA. NO. 13-14-560-CV**
REPORTER'S RECORD
SUPPLEMENTAL VOLUME 1 of 1 VOLUMES
TRIAL COURT CAUSE NO. 2013-DCV-520-F

MARY ALICE GARCIA,      )      IN THE DISTRICT COURT
MARY LOU BROWN          )
        Plaintiff(s)    )
                        )
VS.                     )      NUECES COUNTY, TEXAS
                        )
COASTAL MOTORCARS,LTD.)
BMW OF CORPUS CHRISTI )
                        )
        Defendant(s)    )      214TH JUDICIAL DISTRICT

---

MOTION TO WITHDRAW

---

On the 28th day of MAY, 2014 the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE JOSE LONGORIA, Judge Presiding, held in Corpus Christi, Nueces County, Texas:

Proceedings reported by Stenograph Machine.

COPY

*Appx. 34*

KORI LUCKENBACH HOSEK, CSR

APPEARANCES:

MR. DENNY BARRE
SBOT NO. 01805280
Anderson, Lehrman, Barre
    & Maraist, L.L.P.
Gas Light Square
1001 Third Street, Suite 1
Corpus Christi, Texas   78404-2356
Phone: (361) 884-4981

    ATTORNEY FOR PLAINTIFF(S)

**and**

MR. ERIC STEWART
Huseman & Stewart, PLLC
615 N. Upper Broadway, Suite 2000
Corpus Christi, Texas   78401
Phone:   (361) 883-3563

    ATTORNEY FOR DEFENDANT(S)

## INDEX TO PROCEEDINGS
## SUPPLEMENTAL VOLUME 1 OF 1 VOLUMES
### (Motion to Withdraw)

**May 28, 2014**                                          **Page  Vol**
By the Court ........................................... 4     1
By Mr. Barre ........................................... 4     1
Case called............................................ 5     1
Defendant's Mtn. to Withdraw........................... 5     1
Court's Ruling ........................................ 5     1
By Mr. Barre .......................................... 6     1
Court Reporter's Certificate........................... 9     1

\* \* \* \* \* \* \* \* \*

_REPORTER'S RECORD:   NO EXHIBITS OFFERED OR ADMITTED_

_IN THIS HEARING._

PROCEEDINGS

THE COURT: Mr. Barre, what do you have, sir?

MR. BARRE: Your Honor, we are reconvening a hearing that was previously scheduled, but before we're able to take that up, Mr. Stewart has filed a motion that we probably need to address before we resume our other hearing.

THE COURT: Hold on.

Clay, have them come around.

(Off-the-record discussion on a criminal case.)

(Proceedings resumed:)

MR. BARRE: May we approach, Your Honor?

THE COURT: Yes.

MR. BARRE: I had -- I had previously filed a motion to rule on objections and motion to compel and we showed up last time --

THE COURT: And y'all had some agreements.

MR. BARRE: -- and Eric and I had agreements on some things. We had some differences of opinion on some others, so I sent a letter and we weren't able to get it resolved, but -- Can we go off the record just a second?

THE COURT: Yes.

(Off-the-record Bench conference.)

(Proceedings resumed:)

THE COURT: All right. Let me call the case, 13-DCV-520-F, Mary Alice Garcia, Mary Lou Brown vs. Coastal Motorcar, Ltd.

Okay. I understand you have a motion, Mr. Stewart?

MR. STEWART: Yes, I do, Your Honor. I have a motion to withdraw, and the basis for that motion is that at this time it's not possible for my client and I to cooperate in a manner that would enable me to defend him in this case in any reasonable manner and it was brought to a head by the settings of the motion to compel and the deposition for Friday. I understand that for my client to get new counsel, we've agreed to provide a delay on those items, but it not be a lengthy delay, but I am requesting the Court let me withdraw. I've sent copies of the motion to the client and I have visited with him on the telephone and he is upset about the entire situation, has not consented to my withdrawal.

THE COURT: All right. Based on the fact that there is a conflict here, the Court's going to allow your motion to withdraw, and we will continue

with the case.  Defendant -- let's see, you're plaintiff?

MR. BARRE:  I am, Your Honor.

THE COURT:  You're the plaintiff.  You will be given 30 days to give notice of a mediation date and Robert Pate will be appointed as the mediator.  You need to give them notice of your -- the order to withdraw and you need to give them notice of my order ordering them to be there.  Have a corporate representative and insurance representative live, not by telephone how they've been doing it lately, and failure to do so they will be answering to the Court why they failed to comply with the Court order.

MR. BARRE:  Thank you, Your Honor.

THE COURT:  Get me an order to that effect, please.

MR. BARRE:  And Mr. Stewart has an order that I've reviewed and approved on the withdrawal.  With regard to a resetting of the hearing on Plaintiffs' Motion to Rule on Objections and Compel Discovery and Sanctions, I would -- can we get a setting, Your Honor, a couple of weeks out allowing the Defendant an opportunity to secure other counsel during that time?

THE COURT:  Yes, but you'll have to go

through my court manager because --

MR. BARRE: I will, Your Honor, but I won't request a setting less than two weeks from today --

THE COURT: Good.

MR. BARRE: -- to allow them that opportunity. And I have -- we have an order on the mediation regarding your rulings. And Mr. Stewart has already provided me contact information for the Defendant and I will send him a copy of this -- this order along with whatever Eric is going to send concluding his representation, and that also applies to my pulling down the deposition that was scheduled for Friday.

MR. STEWART: I will advise him of the -- of the changes in calendar, as I'm required to, and provide him a copy of the order in all the manners that I'm required to and, hopefully, he will obtain new counsel in short order.

THE COURT: All right. There's two weeks notice, right? Well, to be set within 30 days, the mediation.

MR. BARRE: The order, I think -- let's see, we'll need to revise that. I had that we would contact the mediator by June the 11th.

THE COURT: Okay, that's fine.

MR. BARRE: And the mediation shall occur before July 9th.

THE COURT: Okay. The mediation to --

MR. BARRE: May we --

THE COURT: -- before July 9th. Contact the mediator. Give Judge Pate a notice.

MR. BARRE: I will e-mail him a copy of the order, Your Honor.

THE COURT: Take care of that part of it.

MR. BARRE: Thank you. And with that, may we be excused?

THE COURT: You may. Thanks guys.

MR. STEWART: Thank you, Your Honor.

MR. BARRE: Thank you.

(END OF PROCEEDINGS.)

THE STATE OF TEXAS )

COUNTY OF NUECES )

I, Kori Luckenbach Hosek, Official Court Reporter in and for the 214th Judicial District Court of Nueces County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is **$45.75** and was paid by **MR. BRIAN MILLER, Attorney**.

WITNESS MY OFFICIAL HAND this the 10th day of March, A.D., 2015.

KORI LUCKENBACH HOSEK, CSR, Texas CSR #4627
Expiration Date: 12/31/2016
Official Court Reporter
214th District Court
Nueces County, Texas
901 Leopard Street, Room 902
Corpus Christi, Texas 78401
(361) 888-0653

KORI LUCKENBACH HOSEK, CSR     *Appx. 42*

**APPELLATE CA. NO. 13-14-560-CV**
REPORTER'S RECORD
VOLUME 2 of 3 VOLUMES
TRIAL COURT CAUSE NO. 2013-DCV-520-F

MARY ALICE GARCIA,          )          IN THE DISTRICT COURT
MARY LOU BROWN              )
          Plaintiff(s)      )
                            )
VS.                         )          NUECES COUNTY, TEXAS
                            )
COASTAL MOTORCARS,LTD.)
BMW OF CORPUS CHRISTI )
                            )
          Defendant(s)      )          214TH JUDICIAL DISTRICT

_____

MOTION FOR SUMMARY JUDGMENT

_____

On the 1st day of JULY, 2014 the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE JOSE LONGORIA, Judge Presiding, held in Corpus Christi, Nueces County, Texas:

Proceedings reported by Stenograph Machine.

COPY

Appx. 43

KORI LUCKENBACH HOSEK, CSR

APPEARANCES:

MR. DENNY BARRE
SBOT NO. 01805280
Anderson, Lehrman, Barre
   & Maraist, L.L.P.
Gas Light Square
1001 Third Street, Suite 1
Corpus Christi, Texas   78404-2356
Phone: (361) 884-4981

ATTORNEY FOR PLAINTIFF(S)

# INDEX TO PROCEEDINGS
## Volume 2 of 3 Volumes
### (Motion for Summary Judgment)

**JULY 1, 2014**                                     **Page  Vol**

Case called.......................................... 5    2

By Mr. Barre ........................................ 5    2

Court's Ruling ...................................... 6    2

Court Reporter's Certificate..................... 7    2

\* \* \* \* \* \* \*

*REPORTER'S NOTE:   NO EXHIBITS OFFERED OR ADMITTED.*

PROCEEDINGS

THE COURT: Mr. Denny, what do you have?

MR. BARRE: Your Honor, I have a summary judgment that's pending against the Defendant, Coastal Motorcars.

THE COURT: Are they here?

MR. BARRE: They are not. The Court may recall, Eric Stewart withdrew.

THE COURT: Yes.

MR. BARRE: And at the same time -- May I approach, Your Honor?

THE COURT: Yes, of course.

MR. BARRE: Mr. Stewart withdrew and the Court ordered a mediation hoping to get the insurance company involved that was retaining Mr. Stewart. However, I've not heard from them. I sent notice of this motion and of this hearing to the Defendant at the address provided by Mr. Stewart. No response is forthcoming. It's ripe for a summary judgment, and the motion is fairly lengthy in that it has all of the affidavits necessary to establish the liability. The basic gist of it, Your Honor, is that my client was sold a vehicle representing it to be of a particular standard of quality or grade when it was of another. She was not told that it was --

THE COURT: Let me go ahead and call it so we'll be on the record. This is Cause Number 2013-DCV-520-F, Mary Alice Garcia and Mary Lou Brown v. Coastal Motors, Ltd., doing business as BMW Corpus Christi.

You may proceed with your motion, sir.

MR. BARRE: Your Honor, we do not believe that there is any material issue of fact that would prevent us from having a summary judgment entered. My client purchased a car. It was represented to be a particular standard of quality when it was of another. The bottom line is they sold her a car that they knew that had been wrecked and had frame damage and didn't tell her. The owner of the company is the one who bought the vehicle at the auction in Dallas, and so they can't escape the knowledge requirement. They knew about it. They didn't tell my client and she's had nothing but trouble with the unit. We requested initially before we even filed the suit that they just take the thing back, give her her money back and let her go about her business, but they refused, and so that's why we're here.

The motion before the Court is to -- to grant a judgment for the damages, for economic damages

equivalent to the difference between what she's required to pay for the vehicle and what they paid for it at auction. And because it's a knowing and intentional violation, we're asking for the Court to award treble damages under the DTPA for three times the amount of that difference in value, and then, of course, attorney's fees.

We're -- we're not seeking -- although there is damages and although there is evidence in the record of additional damages, we're not seeking anything more than that. We're asking for the difference in value, treble damages, and attorney's fees and pre-judgment interest at five percent.

THE COURT: Hearing no opposition, the Court is going to grant your relief prayed for and enter an order granting final summary judgment against Defendant.

(END OF PROCEEDINGS.)

THE STATE OF TEXAS )

COUNTY OF NUECES    )

          I, Kori Luckenbach Hosek, Official Court Reporter in and for the 214th Judicial District Court of Nueces County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

          I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

          I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by_____.

          WITNESS MY OFFICIAL HAND this the __9th__ day of

_____January_____, A.D., 2015.

_____
KORI LUCKENBACH HOSEK, CSR, Texas CSR #4627
Expiration Date: 12/31/2016
Official Court Reporter
214th District Court
Nueces County, Texas
901 Leopard Street, Room 902
Corpus Christi, Texas 78401
(361) 888-0653

KORI LUCKENBACH HOSEK, CSR    *Appx. 49*

## Excerpts from Texas Business and Commerce Code, Chapter 2

Source: www.statutes.legis.state.tx.us

Sec. 2.313.  EXPRESS WARRANTIES BY AFFIRMATION, PROMISE, DESCRIPTION, SAMPLE.  (a)  Express warranties by the seller are created as follows:

(1)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2)  Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3)  Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b)  It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.314.  IMPLIED WARRANTY:  MERCHANTABILITY;  USAGE OF TRADE.  (a)  Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(b) Goods to be merchantable must be at least such as

(1) pass without objection in the trade under the contract description; and

(2) in the case of fungible goods, are of fair average quality within the description; and

(3) are fit for the ordinary purposes for which such goods are used; and

(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any.

(c) Unless excluded or modified (Section 2.316) other implied warranties may arise from course of dealing or usage of trade.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


\* \* \*


Sec. 2.714. BUYER'S DAMAGES FOR BREACH IN REGARD TO ACCEPTED GOODS. (a) Where the buyer has accepted goods and given notification (Subsection (c) of Section 2.607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(b) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(c) In a proper case any incidental and consequential damages under the next section may also be recovered.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.

## Excerpts from Texas Business and Commerce Code, Chapter 17

Source: www.statutes.legis.state.tx.us

Sec. 17.45. DEFINITIONS. As used in this subchapter:

(1) "Goods" means tangible chattels or real property purchased or leased for use.

(2) "Services" means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.

(3) "Person" means an individual, partnership, corporation, association, or other group, however organized.

(4) "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

(5) "Unconscionable action or course of action" means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

(6) "Trade" and "commerce" mean the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state.

(7) "Documentary material" includes the original or a copy of any book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription, or other tangible document or recording, wherever situated.

(8)  "Consumer protection division" means the consumer protection division of the attorney general's office.

(9)  "Knowingly" means actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim or, in an action brought under Subdivision (2) of Subsection (a) of Section 17.50, actual awareness of the act, practice, condition, defect, or failure constituting the breach of warranty, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

(10)  "Business consumer" means an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services for commercial or business use. The term does not include this state or a subdivision or agency of this state.

(11)  "Economic damages" means compensatory damages for pecuniary loss, including costs of repair and replacement. The term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society.

(12)  "Residence" means a building:

(A)  that is a single-family house, duplex, triplex, or quadruplex or a unit in a multiunit residential structure in which title to the individual units is transferred to the owners under a condominium or cooperative system;  and

(B)  that is occupied or to be occupied as the consumer's residence.

(13)  "Intentionally" means actual awareness of the falsity, deception, or unfairness of the act or practice, or the condition, defect, or failure constituting a breach of warranty giving rise to the consumer's claim, coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.  Intention may be inferred from objective

manifestations that indicate that the person acted intentionally or from facts showing that a defendant acted with flagrant disregard of prudent and fair business practices to the extent that the defendant should be treated as having acted intentionally.

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973.  Amended by Acts 1975, 64th Leg., p. 149, ch. 62, Sec. 1, eff. Sept. 1, 1975;  Acts 1977, 65th Leg., p. 600, ch. 216, Sec. 1, eff. May 23, 1977;  Acts 1979, 66th Leg., p. 1327, ch. 603, Sec. 2, eff. Aug. 27, 1979;  Acts 1983, 68th Leg., p. 4943, ch. 883, Sec. 2, 3, eff. Aug. 29, 1983;  Acts 1995, 74th Leg., ch. 414, Sec. 2, eff. Sept. 1, 1995.
Amended by:
      Acts 2007, 80th Leg., R.S., Ch. 411 (S.B. 1047), Sec. 1, eff. September 1, 2007.


      Sec. 17.46.  DECEPTIVE TRADE PRACTICES UNLAWFUL.  (a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.
      (b)  Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:
            (1)  passing off goods or services as those of another;
            (2)  causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
            (3)  causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;
            (4)  using deceptive representations or designations of geographic origin in connection with goods or services;

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

(6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand;

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparaging the goods, services, or business of another by false or misleading representation of facts;

(9) advertising goods or services with intent not to sell them as advertised;

(10) advertising goods or services with intent not to supply a reasonable expectable public demand, unless the advertisements disclosed a limitation of quantity;

(11) making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

(14) misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

(15) basing a charge for the repair of any item in whole or in part on a guaranty or warranty instead of on the value of the actual repairs made or work to be performed on the item without stating separately the charges for the work and the charge for the warranty or guaranty, if any;

(16) disconnecting, turning back, or resetting the odometer of any motor vehicle so as to reduce the number of miles indicated on the odometer gauge;

(17) advertising of any sale by fraudulently representing that a person is going out of business;

(18) advertising, selling, or distributing a card which purports to be a prescription drug identification card issued under Section 4151.152, Insurance Code, in accordance with rules adopted by the commissioner of insurance, which offers a discount on the purchase of health care goods or services from a third party provider, and which is not evidence of insurance coverage, unless:

(A) the discount is authorized under an agreement between the seller of the card and the provider of those goods and services or the discount or card is offered to members of the seller;

(B) the seller does not represent that the card provides insurance coverage of any kind; and

(C) the discount is not false, misleading, or deceptive;

(19) using or employing a chain referral sales plan in connection with the sale or offer to sell of goods, merchandise, or anything of value, which uses the sales technique, plan, arrangement, or agreement in which the buyer or prospective buyer is offered the opportunity to purchase merchandise or goods and in connection with the purchase receives the seller's promise or representation that the buyer shall have the right to receive compensation or consideration in any form for furnishing to the seller the names of other prospective buyers if receipt of the compensation or consideration is contingent upon the occurrence of an event subsequent to the time the buyer purchases the merchandise or goods;

(20) representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve, provided, however, that nothing in this subchapter

shall be construed to expand the implied warranty of
merchantability as defined in Sections 2.314 through 2.318 and
Sections 2A.212 through 2A.216 to involve obligations in excess
of those which are appropriate to the goods;

  (21) promoting a pyramid promotional scheme, as
defined by Section 17.461;

  (22) representing that work or services have been
performed on, or parts replaced in, goods when the work or
services were not performed or the parts replaced;

  (23) filing suit founded upon a written contractual
obligation of and signed by the defendant to pay money arising
out of or based on a consumer transaction for goods, services,
loans, or extensions of credit intended primarily for personal,
family, household, or agricultural use in any county other than
in the county in which the defendant resides at the time of the
commencement of the action or in the county in which the
defendant in fact signed the contract; provided, however, that a
violation of this subsection shall not occur where it is shown
by the person filing such suit he neither knew or had reason to
know that the county in which such suit was filed was neither
the county in which the defendant resides at the commencement of
the suit nor the county in which the defendant in fact signed
the contract;

  (24) failing to disclose information concerning goods
or services which was known at the time of the transaction if
such failure to disclose such information was intended to induce
the consumer into a transaction into which the consumer would
not have entered had the information been disclosed;

  (25) using the term "corporation," "incorporated," or
an abbreviation of either of those terms in the name of a
business entity that is not incorporated under the laws of this
state or another jurisdiction;

  (26) selling, offering to sell, or illegally
promoting an annuity contract under Chapter 22, Acts of the 57th
Legislature, 3rd Called Session, 1962 (Article 6228a-5, Vernon's
Texas Civil Statutes), with the intent that the annuity contract

will be the subject of a salary reduction agreement, as defined by that Act, if the annuity contract is not an eligible qualified investment under that Act or is not registered with the Teacher Retirement System of Texas as required by Section 8A of that Act; or

   (27)  taking advantage of a disaster declared by the governor under Chapter 418, Government Code, by:

    (A)  selling or leasing fuel, food, medicine, or another necessity at an exorbitant or excessive price; or

    (B)  demanding an exorbitant or excessive price in connection with the sale or lease of fuel, food, medicine, or another necessity.

  (c)(1) It is the intent of the legislature that in construing Subsection (a) of this section in suits brought under Section 17.47 of this subchapter the courts to the extent possible will be guided by Subsection (b) of this section and the interpretations given by the Federal Trade Commission and federal courts to Section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C.A. Sec. 45(a)(1)].

   (2)  In construing this subchapter the court shall not be prohibited from considering relevant and pertinent decisions of courts in other jurisdictions.

  (d)  For the purposes of the relief authorized in Subdivision (1) of Subsection (a) of Section 17.50 of this subchapter, the term "false, misleading, or deceptive acts or practices" is limited to the acts enumerated in specific subdivisions of Subsection (b) of this section.

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973.  Amended by Acts 1977, 65th Leg., p. 601, ch. 216, Sec. 2, 3, eff. May 23, 1977;  Acts 1977, 65th Leg., p. 892, ch. 336, Sec. 1, eff. Aug. 29, 1977;  Acts 1979, 66th Leg., p. 1327, ch. 603, Sec. 3, eff. Aug. 27, 1979;  Acts 1987, 70th Leg., ch. 280, Sec. 1, eff. Sept. 1, 1987;  Acts 1993, 73rd Leg., ch. 570, Sec. 6, eff. Sept. 1, 1993;  Acts 1995, 74th Leg., ch. 414, Sec. 3, eff. Sept. 1, 1995;  Acts 1995, 74th Leg., ch. 463, Sec. 1,

eff. Sept. 1, 1995;  Acts 2001, 77th Leg., ch. 962, Sec. 1, eff. Sept. 1, 2001;  Acts 2001, 77th Leg., ch. 1229, Sec. 27, eff. June 1, 2002;  Acts 2003, 78th Leg., ch. 1276, Sec. 4.001(a), eff. Sept. 1, 2003.
Amended by:
      Acts 2005, 79th Leg., Ch. 728 (H.B. 2018), Sec. 11.101, eff. September 1, 2005.
      Acts 2007, 80th Leg., R.S., Ch. 1230 (H.B. 2427), Sec. 26, eff. September 1, 2007.


* * *


      Sec. 17.50.  RELIEF FOR CONSUMERS.  (a)  A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
            (1)  the use or employment by any person of a false, misleading, or deceptive act or practice that is:
                  (A)  specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and
                  (B)  relied on by a consumer to the consumer's detriment;
            (2)  breach of an express or implied warranty;
            (3)  any unconscionable action or course of action by any person; or
            (4)  the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code.
      (b)  In a suit filed under this section, each consumer who prevails may obtain:
            (1)  the amount of economic damages found by the trier of fact.  If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages;  or if the trier of fact finds the conduct

was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages;

      (2)  an order enjoining such acts or failure to act;

      (3)  orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter;  and

      (4)  any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment.  The court may not revoke or suspend a license to do business in this state or appoint a receiver to take over the affairs of a person who has failed to satisfy a judgment if the person is a licensee of or regulated by a state agency which has statutory authority to revoke or suspend a license or to appoint a receiver or trustee.  Costs and fees of such receivership or other relief shall be assessed against the defendant.

   (c)  On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

   (d)  Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees.

   (e)  In computing additional damages under Subsection (b), attorneys' fees, costs, and prejudgment interest may not be considered.

   (f)  A court may not award prejudgment interest applicable to:

      (1)  damages for future loss under this subchapter; or

      (2)  additional damages under Subsection (b).

(g)  Chapter 41, Civil Practice and Remedies Code, does not apply to a cause of action brought under this subchapter.

(h)  Notwithstanding any other provision of this subchapter, if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally.  For the purpose of the recovery of damages for a cause of action described by this subsection only, a reference in this subchapter to economic damages means actual damages.  In applying Subsection (b)(1) to an award of damages under this subsection, the trier of fact is authorized to award a total of not more than three times actual damages, in accordance with that subsection.

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973.  Amended by Acts 1977, 65th Leg., p. 603, ch. 216, Sec. 5, eff. May 23, 1977;  Acts 1979, 66th Leg., p. 1329, ch. 603, Sec. 4, eff. Aug. 27, 1979;  Acts 1989, 71st Leg., ch. 380, Sec. 2, eff. Sept. 1, 1989;  Acts 1995, 74th Leg., ch. 414, Sec. 5, eff. Sept. 1, 1995.
Amended by:
      Acts 2005, 79th Leg., Ch. 728 (H.B. 2018), Sec. 11.102, eff. September 1, 2005.

## Excerpts from Texas Business Organizations Code, Chapter 5

Source: www.statutes.legis.state.tx.us

Sec. 5.201. DESIGNATION AND MAINTENANCE OF REGISTERED AGENT AND REGISTERED OFFICE. (a) Each filing entity and each foreign filing entity shall designate and continuously maintain in this state:

(1) a registered agent; and

(2) a registered office.

(b) The registered agent:

(1) is an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity;

(2) may be:

(A) an individual who:

(i) is a resident of this state; and

(ii) has consented in a written or electronic form to be developed by the office of the secretary of state to serve as the registered agent of the entity; or

(B) an organization, other than the filing entity or foreign filing entity to be represented, that:

(i) is registered or authorized to do business in this state; and

(ii) has consented in a written or electronic form to be developed by the office of the secretary of state to serve as the registered agent of the entity; and

(3) must maintain a business office at the same address as the entity's registered office.

(c) The registered office:

(1) must be located at a street address where process may be personally served on the entity's registered agent;

(2) is not required to be a place of business of the filing entity or foreign filing entity; and

(3) may not be solely a mailbox service or a telephone answering service.

(d)  A registered agent that is an organization must have an employee available at the registered office during normal business hours to receive service of process, notice, or demand. Any employee of the organization may receive service at the registered office.

Acts 2003, 78th Leg., ch. 182, Sec. 1, eff. Jan. 1, 2006. Amended by:

Acts 2007, 80th Leg., R.S., Ch. 688 (H.B. 1737), Sec. 28, eff. September 1, 2007.

Acts 2009, 81st Leg., R.S., Ch. 1123 (H.B. 1787), Sec. 2, eff. January 1, 2010.

Acts 2011, 82nd Leg., R.S., Ch. 1151 (H.B. 2047), Sec. 1, eff. September 1, 2011.


* * *


Sec. 5.202.  CHANGE BY ENTITY TO REGISTERED OFFICE OR REGISTERED AGENT.  (a)  A filing entity or foreign filing entity may change its registered office, its registered agent, or both by filing a statement of the change in accordance with Chapter 4.

(b)  The statement must contain:

(1)  the name of the entity;

(2)  the name of the entity's registered agent;

(3)  the street address of the entity's registered agent;

(4)  if the change relates to the registered agent, the name of the entity's new registered agent;

(5)  if the change relates to the registered office, the street address of the entity's new registered office;

(6)  a recitation that the change specified in the statement is authorized by the entity;  and

(7)  a recitation that the street address of the registered office and the street address of the registered agent's business are the same.

(c) On acceptance of the statement by the filing officer, the statement is effective as an amendment to the appropriate provision of:

(1) the filing entity's certificate of formation; or

(2) the foreign filing entity's registration.

Acts 2003, 78th Leg., ch. 182, Sec. 1, eff. Jan. 1, 2006.

## Excerpts from Texas Civil Practice and Remedies Code, Chapter 30

Source: www.statutes.legis.state.tx.us

Sec. 30.015.  PROVISION OF CURRENT ADDRESS OF PARTY IN CIVIL ACTION.  (a)  In a civil action filed in a district court, county court, statutory county court, or statutory probate court, each party or the party's attorney must provide the clerk of the court with written notice of the party's name and current residence or business address.

(b)  The notice required by Subsection (a) may not be required from any party or party's attorney if such party has not appeared or answered in the civil action.

(c)  The notice required by Subsection (a) must be provided at the time the party files its initial pleading with the court or not later than the seventh day after the date the clerk of the court requests the information.

(d)  If the party's address changes during the course of a civil action, the party or the party's attorney must provide the clerk of the court with written notice of the party's new address.

(e)  If the party or the party's attorney fails to provide the notice required by Subsection (a), the trial court may assess a fine of not more than $50.

(f)  It is a defense to a fine assessed under this section that the party or the party's attorney could not reasonably obtain and provide the information required by Subsection (a).

(g)  Repealed by Acts 1999, 76th Leg., ch. 251, Sec. 2, eff. Sept. 1, 1999.

Added by Acts 1997, 75th Leg., ch. 887, Sec. 1, eff. Sept. 1, 1997.  Amended by Acts 1999, 76th Leg., ch. 251, Sec. 1, 2, eff. Sept. 1, 1999.

# Excerpts from Texas Civil Practice and Remedies Code, Chapter 38

Source: www.statutes.legis.state.tx.us

     Sec. 38.001.  RECOVERY OF ATTORNEY'S FEES.  A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

          (1)  rendered services;

          (2)  performed labor;

          (3)  furnished material;

          (4)  freight or express overcharges;

          (5)  lost or damaged freight or express;

          (6)  killed or injured stock;

          (7)  a sworn account;  or

          (8)  an oral or written contract.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

**1997 Tex. Sess. Law Serv. Ch. 887 (H.B. 2261) (VERNON'S)**


VERNON'S TEXAS SESSION LAW SERVICE 1997
Seventy-Fifth Legislature, 1997 Regular Session

Additions are indicated by <<+ Text +>>; deletions by <<- Text ->>
Changes in tables are made but not highlighted.

CHAPTER 887
H.B. No. 2261
COURTS—CIVIL ACTIONS—ADDRESSES OF PARTIES


AN ACT relating to providing the court with certain information regarding a party in a civil action.


Be it enacted by the Legislature of the State of Texas:

SECTION 1. Chapter 30, Civil Practice and Remedies Code, is amended by adding Section 30.015 to read as follows:

<< TX CIV PRAC & REM § 30.015 >>

<<+Sec. 30.015. PROVISION OF CURRENT ADDRESS OF PARTY IN CIVIL ACTION. (a) In a civil action, each party or the party's attorney must provide the clerk of the court with written notice of the party's name and current residence or business address.+>>

<<+(b) The notice required by Subsection (a) may not be required from any party or party's attorney if such party has not appeared or answered in the civil action.+>>

<<+(c) The notice required by Subsection (a) must be provided at the time the party files its initial pleading with the court or not later than the seventh day after the date the clerk of the court requests the information.+>>

<<+(d) If the party's address changes during the course of a civil action, the party or the party's attorney must provide the clerk of the court with written notice of the party's new address.+>>

<<+(e) If the party or the party's attorney fails to provide the notice required by Subsection (a), the trial court may assess a fine of not more than $50.+>>

<<+(f) It is a defense to a fine assessed under this section that the party or the party's attorney could not reasonably obtain and provide the information required by Subsection (a).+>>

<<+(g) Information provided to a clerk of a court under this section is confidential and may not be disclosed to the public without the express authorization of the court.+>>

<< Note: TX CIV PRAC & REM § 30.015 >>

SECTION 2. This Act takes effect September 1, 1997, and applies only to suits filed on or after the effective date of this Act. SECTION 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

Passed by the House on April 25, 1997, by a non-record vote; the House concurred in Senate amendments to H.B. No. 2261 on May 24, 1997, by a non-record vote; passed by the Senate, with amendments, on May 22, 1997, by a viva-voce vote.

Approved June 18, 1997.


Effective September 1, 1997.

*Appx. 68*

TX LEGIS 887 (1997)

**End of Document**                                         © 2015 Thomson Reuters. No claim to original U.S. Government Works.